478 A.2d 1318

**COMMONWEALTH of Pennsylvania**

v.

**Ronald CIMOROSE, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 11, 1983.

Filed June 1, 1984.

Reargument Denied Aug. 7, 1984.

2

4

Thomas Q. Ciccone, Jr., Philadelphia, for appellant.

Helen T. Kane, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, President Judge, and MONTEMURO and POPOVICH, JJ.

PER CURIAM:

This is an appeal from a judgment of sentence for possession of controlled substances, possession with intent to deliver and criminal conspiracy. Appellant and a co-defendant, Louis A. Moore, were tried by a jury and found guilty. Post-trial motions were filed and denied by the trial court. New counsel represents appellant on appeal. We have concluded that we must remand for an evidentiary hearing on whether trial counsel was ineffective.

The facts as stated by the trial court are as follows:

From January 23, 1981, until the early morning hours of January 31, 1981, the Pennsylvania State Police and other law enforcement officials conducted a surveillance of the Tunbridge Apartments in Middletown Township, Delaware County, Pennsylvania. (N.T. at 65). During the course of this surveillance the patterns of ingress and egress of occupants of Apartment D–204 were observed, which had been leased by Defendant Ronald Cimorose [appellant]. (N.T. at 8).

Defendant Cimorose was observed on January 23, 1981, carrying a large plastic bag from the apartment in question which he deposited in the communal trash dump in the apartment parking lot. (N.T. at 66). This trash was confiscated from the trash dump site and it was found to include methamphetamine residue.

Defendant Louis A. Moore was observed on a number of occasions in the parking lot of the apartment complex, opening the trunk to a black Ford Torino bearing a

Maryland registration and license No. AJR 435. He was observed removing undetermined objects from the trunk and then returning to the apartment in question. (N.T. at 66–68, 182, 184). On January 23, 1981, Defendant Cimorose was also observed at the black Torino from which he apparently removed something from the trunk and returned to Apartment D–204. (N.T. at 65).

Based upon their observations, police obtained a search warrant from the premises of Apartment D–204 which they executed at approximately 12:30 A.M. on January 31, 1981. A quantity of drugs, money and drug related paraphernalia were seized as a result of the search. (N.T. at 71–72, 115).

Defendant Cimorose was arrested along with five other individuals, included a Juvenile, Annette Williamson, present inside the apartment at that time. (N.T. at 107). Defendant Moore was arrested outside the apartment at approximately 12:45 A.M. (N.T. at 145).

As a result of the evidence seized during the search of the apartment, a second warrant was obtained for the black Torino which had remained in the parking lot throughout the surveillance period. (N.T. at 76). A quantity of methamphetamine weighing 1.79 pounds was found inside the trunk of the Ford Torino.[1] (N.T. at 61). Trial court slip opinion, at 2–3.

▌ Appellant first argues that he was denied a fair trial because he was not aware of a court order that directed Annette Williamson to testify for the Commonwealth. The order in question was entered by a judge in Juvenile Court, and provided:

... that Annette Williamson, ... shall be temporarily housed at the Juvenile Detention Center at Lima, Pennsylvania, during the course of the [appellant's] trial. It was ordered by the Court at the time of the hearing on the said Annette Williamson that she cooperate and testify on behalf of the Commonwealth in the trial of the

1. The substance found inside the trunk of the Ford Torino was 7% methamphetamine. N.T. at 237.

[appellant]. The said Order is to continue only during the course of the trial for the purpose of protecting the witness and shall terminate at the end of the trial of the [appellant]. The within Order is not to be filed until after termination of the trial.

Appellant's argument is that he should have been informed of this order "so that the same could be brought to the attention of the jury." Brief of appellant at 16. This argument is without merit, for the jury was aware of the circumstances in which Williamson testified. Thus, the following testimony was elicited from her:

Q. [Assistant District Attorney] Has the Commonwealth made any promises to you in exchange for your testifying here today?

A. [Williamson] Just that my charges in Juvenile Court will be dismissed.

Q. What charges were they, or are they?

A. Possession with intent to distribute and conspiracy.

Q. Was that conspiracy in relation to the charges brought against Mr. Cimorose and Mr. Moore for which they're here today?

A. Yes.

(N.T. July 28, 1981, at 15).

Appellant argues that the Commonwealth allowed Williamson to "falsely testify at trial that she did not have to testify against these appellant when in fact, the Court Order makes it clear that she had previously been so ordered to cooperate and testify by the Court." Brief for appellant at 19. However, the record does not support this argument. Williamson testified as follows:

Q. [Counsel for co-defendant Moore] [The charges] haven't been dropped yet; have they?

A. [Williamson] Uh-uh.

Q. They won't be dropped until you testify against Mr. Moore?

A. Right.

Q. Do you know what happens if you don't testify against Mr. Moore?

A. Yes.

Q. What happens then?

A. Then I go to jail.

Q. So you have to testify against Mr. Moore; don't you?

A. No.

Q. If you don't, you go to jail?

A. Then I'll go to court and they'll decide on that.

*Id.* at 33–34.

Nothing suggests that this testimony was false. The court order directed Williamson to testify "in the trial of" *appellant,* not Moore; and in any event, she admitted that she could "go to jail" if she didn't testify against Moore.

■■■ Appellant next argues that trial counsel was ineffective in failing to request an accomplice instruction to the jury concerning the testimony of Williamson.[2]

It is the rule in Pennsylvania that the testimony of an accomplice of a defendant, given at the latter's trial, comes from a corrupt source and is to be carefully scrutinized and accepted with caution; it is clear error for the trial judge to refuse to give a charge to the effect after being specifically requested to do so.

*Commonwealth v. Sisak,* 436 Pa. 262, 265, 259 A.2d 428, 430 (1969).

A witness is an accomplice if the witness "could be indicted for the crime for which the accused is charged." *Id.,* 436 Pa. at 268, 259 A.2d at 431, quoting *Commonwealth v. Hopkins,* 165 Pa.Super. 561, 564, 69 A.2d 428, 430 (1949). Since Williamson was charged with the same crimes that appellant was charged with, appellant would have been entitled to an accomplice instruction if one had been requested. *Commonwealth v. Coades,* 454 Pa. 448, 311 A.2d

---

2. Since this appeal is the first time that appellant is represented by counsel other than his trial counsel, the issue of trial counsel's ineffectiveness may be raised at this time. *Commonwealth v. Triplett,* 476 Pa. 83, 381 A.2d 877 (1977).

896 (1973). However, we are not prepared at this stage to declare that trial counsel was ineffective in failing to request an accomplice instruction. As the court held in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604, 235 A.2d 349, 352 (1967): "[C]ounsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interest." (Emphasis in original). Accordingly, in *Commonwealth v. Karabin*, 493 Pa. 249, 253, 426 A.2d 91, 93 (1981), the court held that counsel was not ineffective in failing to request an accomplice instruction: "Rather, it was a trial tactic of an obvious sort: Karabin's defense was that he did not perform the shootings. To request the accomplice instruction could derogate that defense." We must therefore remand for an evidentiary hearing so that the trial court may determine whether in this case there was a similar tactical reason, or some other reasonable basis, for trial counsel's failure to request an accomplice instruction.

Appellant next argues that the trial court should have given instructions on the "exclusive access" rule, and that trial counsel was ineffective in failing to raise that issue in post-trial motions.[3]

The so-called "exclusive access" rule is relevant to the Commonwealth's burden of proving either actual or constructive possession of a controlled substance. It is derived from 9 WIGMORE ON EVIDENCE § 2513 (3d ed. 1940), as originally applied in this jurisdiction in *Commonwealth v. Kauffman*, 155 Pa.Super. 347, 38 A.2d 425 (1944) (rule applied to stolen property found in garage). *See also, Commonwealth v. Fortune*, 456 Pa. 365, 318 A.2d 327 (1974); *Commonwealth v. Davis*, 444 Pa. 11, 16, 280 A.2d 119, 121 (1971). The "exclusive access" rule is applicable when several people "other than the accused had equal

---

3. Appellant claims that the trial judge failed to comply with Pa.R. Crim.P. 1123, which requires the trial judge to advise the defendant of his right to file post-trial motions. This claim is without merit, for the record shows that appellant was so advised. Supplemental Record at 1.

access with him to the place in which the property was discovered." *Commonwealth v. Luddy*, 281 Pa.Super. 541, 548, 422 A.2d 601, 605 (1980), *cert. denied* 454 U.S. 825, 102 S.Ct. 114, 70 L.Ed.2d 99 (1981). "[E]vidence that the defendant was one of a group of persons on the scene where the contraband was found is insufficient to support an inference of constructive possession." *Id.*, 281 Pa.Superior Ct. at 548, 422 A.2d at 605.

■ It is, in effect, a statement of what degree of evidence is insufficient to sustain a conviction. The jury charge given by the trial court, while never alluding to the term "exclusive access" properly states what the jury must find in order to convict the appellant.

The charge given by the court on the element of possession was as follows:

In order to find the Defendant guilty of possessing a controlled substance, you must be satisfied that the following two elements have been proven beyond a reasonable doubt. First, that the Defendant or Defendants possessed methamphetamine. Second, that the Defendant, one or both, possessed that substance knowingly or intentionally. For a person to possess a controlled substance, he must have the power to control the intent to control that substance. A person cannot possess a controlled substance unless he is aware of the presence and the nature of that substance. In other words, he must know that he has the substance and he must know what it is. If you are satisfied that the two elements of possessing a controlled substance have been proven beyond a reasonable doubt, you should find the Defendant or Defendants guilty. Otherwise, you must find them not guilty of that charge.

(N.T. July 30, 1981, at 283). Later in the charge, the court further reiterated:

[F]or a person to possess a controlled substance, he must have the power to control and the intent to control that substance. A person cannot possess a controlled substance unless he is aware of the presence and nature of

10

that substance. A person does not possess a controlled substance merely because he is aware of the presence and nature of the substance or because he is physically close to it. Apparent proof of such facts may be evidence tending to show possession. They do not of themselves establish possession. Two or more persons may have joint possession of a controlled substance provided each has the intent to exercise joint control of that substance and they share the power to control the substance. Each of the joint possessors is regarded as having possession of the substance for possession by the criminal law. In determining whether or not a Defendant has possession of a controlled substance, you should consider evidence of all facts and circumstances which may shed light on the question of whether a Defendant had the power to control and the intent to control that substance. If after considering all of these factors as to possession as to intent to deliver if you find the Commonwealth has established that one or both Defendants possessed the drug, methamphetamine, with the intent to deliver that drug to another person, then you may find that Defendant guilty. Otherwise, you must find the Defendant not guilty of that charge.

(*Id.* at 286–187). This charge is virtually identical with that recommended in Pa.S.S.J. (Crim.) 16.02(b)A CONTROLLED SUBSTANCE, "POSSESSION" DEFINED. It states the standards for possession, constructive possession and joint possession and the requirement that the Commonwealth is required to prove possession beyond a reasonable doubt.

■■ A trial court is not required to accept requested instructions verbatim. The key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, *Commonwealth v. Sisco*, 484 Pa. 85, 398 A.2d 955 (1979); *Commonwealth v. Freeman*, 295 Pa.Super. 467, 441 A.2d 1327 (1982), and is sufficient to guide the jury in its deliberations. *Commonwealth v. Lesher*, 473 Pa. 141, 373 A.2d 1088 (1977); *Com-*

*monwealth v. Porter,* 300 Pa.Super. 260, 446 A.2d 605 (1982).

The evidence presented at trial did not warrant an instruction on "exclusive access." With respect to the methamphetamine found in the apartment, such an instruction would be clearly inappropriate because the methamphetamine was on a table in front of the appellant and the appellant was holding a straw containing methamphetamine residue. With respect to the methamphetamine found in the automobile trunk, the evidence demonstrates that only the appellant and his co-defendant and co-conspirator, Louis Moore, had access to the trunk of the automobile. Although Moore may have been accompanied by other persons on his "supply runs" to the trunk, he is the one who unlocked and opened the trunk on each occasion. Thus, only Moore and the appellant (who also opened the trunk) can be said to have had access to the trunk.

There is much more in the present case than "evidence that the defendant was one of a group of persons on the scene where the contraband was found." Here there are two persons with access to a locked trunk of an automobile (a locale of extremely limited access), apparently not in running condition, parked in the parking lot of the apartment complex where the appellant lives. Both of those persons utilized their access to the trunk of the automobile, where a large amount of a controlled substance was later found. The trial court charged the jury on joint possession and on constructive possession, both of which were applicable under the evidence presented. We find no error in the trial court's charge and consequently must find no merit in appellant's claim of ineffectiveness with respect to the charge.[4]

4. We would also state that the instruction was unnecessary in light of the fact that the appellant was charged with only one count of possession and one count of possession with intent to deliver, respectively. Thus, the jury could have based the finding of guilt on the methamphetamine found in the apartment alone.

■ Appellant next argues that the trial court failed to instruct the jury properly concerning the mere presence rule, and that trial counsel was ineffective in failing to raise that issue in post-trial motions. Appellant claims that evidence of his mere presence at the scene was insufficient to prove conscious dominion over the drugs. *Commonwealth v. Macolino*, 302 Pa.Super. 96, 448 A.2d 543 (1982), *rev'd*, 503 Pa. 201, 469 A.2d 132 (1983). This argument is without merit. As already stated, appellant was not merely present but was seated directly in front of the methamphetamine, holding a straw containing methamphetamine residue. A mere presence instruction was therefore not warranted, so that counsel was not ineffective in failing to raise that issue in post-trial motions.

The appellant finally contends that counsel was ineffective for failing to preserve for appeal an allegation that the trial court erred in admitting the contents of a black notebook into evidence. The appellant states that "[c]ounsel's objection was based upon failure of the Commonwealth to make any attempt to authenticate the handwriting or other entries in the book and that the entries could not properly be attributed to either Defendant at trial." Brief for appellant at 29.

■ The Commonwealth had admitted into evidence, and was allowed to read to the jury, names, dates and figures from a black notebook. The black notebook was found in a locked closet in the appellant's apartment; the key to the closet was in the possession of Moore. The black notebook contained entries, apparently the records of drug transactions, which were *identical* to entries made in a red notebook found in the possession of Moore at the time of his arrest. Moreover, Annette Williamson testified that she observed Moore making entries in the red notebook on January 25, 1981. Specifically, she stated, "[He was] [r]ewriting the pages on something, copying the pages over." (N.T. July 28, 1981, at 31). At trial, Trooper Ellis read from the black notebook the following statement, "I paid into Morton ...", followed by a list of dates and sums. (N.T.

July 29, 1981, at 188). "Morton" is a name by which the appellant is sometimes known. (N.T. July 28, 1981, at 26). It is the Commonwealth's position that the contents of the notebook were admissible against the appellant because of the conspiracy between appellant and his co-defendant, Moore. Acts of a co-conspirator if in furtherance of the conspiracy may be admissible against the accused. 4 WIG-MORE, EVIDENCE § 1079 (Chadbourn rev. 1972). However, there must first be adequate proof of a conspiracy. *Commonwealth v. Hirsch*, 225 Pa.Super. 494, 311 A.2d 679 (1973). "Adequate proof of a conspiracy is not proof beyond a reasonable doubt, but merely proof by a fair preponderance of the evidence...." *Id.*, 225 Pa.Superior Ct. at 497, 311 A.2d at 681. Herein, we conclude that it was at least arguable that the contents of the black notebook should not have been admitted against the appellant. Therefore, since a remand is required in any event, we find it appropriate for the hearing court to inquire into trial counsel's failure to preserve the issue for appeal.

The judgment of sentence is vacated and the case is remanded to the trial court for an evidentiary hearing consistent with this opinion. Jurisdiction is relinquished.