597 A.2d 1196

COMMONWEALTH of Pennsylvania

v.

Phyllis J. MICKENS, Appellant.

Superior Court of Pennsylvania.

Submitted May 28, 1991.

Filed Oct. 8, 1991.

268

Patrick J. Connors, Media, for appellant.

Vram Nedurian, Jr., Asst. Dist. Atty., Media, for Com., appellee.

Before WIEAND, OLSZEWSKI and MONTGOMERY, JJ.

WIEAND, Judge:

Phyllis J. Mickens was tried by jury and was found guilty of possession of phencyclidine (PCP), possession of PCP with intent to deliver and criminal conspiracy. Post-trial motions were denied following an evidentiary hearing, and Mickens was sentenced to pay fines in the total amount of fifty thousand ($50,000.00) dollars and serve concurrent terms of imprisonment for not less than five (5) years nor more than ten (10) years for possession with intent to

deliver and conspiracy.[1] On direct appeal, she argues that the trial court erred by refusing to suppress drugs seized by the police, by refusing to require that the Commonwealth disclose the identity of its confidential informants, and by incorrectly utilizing the mandatory sentencing provisions of 18 Pa.C.S. § 7508(a)(4). Appellant also argues that her trial counsel was ineffective because he failed to (1) call character witnesses; (2) object to an allegedly erroneous jury instruction pertaining to reasonable doubt; and (3) object to an instruction which allegedly confused appellant's involvement with that of a co-conspirator. We find no merit in these arguments and, therefore, affirm the judgment of sentence.

Appellant first challenges the denial of her pre-trial motion to suppress PCP which had been seized by police from the vehicle owned by her co-conspirator, Diane McNamee. In reviewing the denial of a motion to suppress evidence, we must

'determine whether the factual findings of the [suppression] court are supported by the record. In making this determination, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense, as, fairly read in the context of the record as a whole, remains uncontradicted. If, when so viewed, the evidence supports the factual findings, we are bound by such findings and may only reverse if the legal conclusions drawn therefrom are in error. *Commonwealth v. Trenge*, 305 Pa.Super. 386, 451 A.2d 701 (1982).'

*Commonwealth v. Schneider*, 386 Pa.Super. 202, 206, 562 A.2d 868, 870 (1989), quoting *Commonwealth v. Chamberlain*, 332 Pa.Super. 108, 112, 480 A.2d 1209, 1211 (1984). See also: *Commonwealth v. Kichline*, 468 Pa. 265, 280–281, 361 A.2d 282, 290 (1976); *Commonwealth v. Stark*, 363 Pa.Super. 356, 365, 526 A.2d 383, 388 (1987).

The evidence presented at appellant's suppression hearing was recited in the trial court's post-trial opinion as follows:

1. The conviction for simple possession of PCP was held to merge for purposes of sentencing.

In April of 1989, Detective Greenwalt of the Delaware County Criminal Investigation Division, received information from a confidential informant (hereinafter referred to [as] CI–1) regarding this Defendant. The information received was that Co–Defendant MacNamee on a biweekly basis, usually on Thursday nights, met with a black female known as Phyllis at a site along Township Line Road at which time MacNamee purchased a large quantity of Phencyclidine from[ ] [t]he black female known as Phyllis. CI–1 further related to Detective Greenwalt that the black female known as Phyllis could be described as heavy set, in her late forties and was the owner of a store in the City of Philadelphia. CI–1 [ ] further related to Detective Greenwalt that co-defendant MacNamee drives a tan Toyota and Defendant drives a maroon mid-sized vehicle. Detective Greenwalt testified that the information [supplied] in the past by CI–1 led to the arrest of at least two persons, and at all times, Detective Greenwalt found CI–1 to be truthful and reliable.

Detective Greenwalt during the course of this investigation received information from a second confidential informant (hereinafter referred to [as] CI–2). CI–2 corroborated the information the Detective received from CI–1 and further related that co-defendant MacNamee in meeting Phyllis generally obtained 15–30 bundles of PCP at each meeting. Also, CI–2 gave Diane MacNamee's address and Pennsylvania registration of MacNamee's tan Toyota.

After speaking with both confidential informants, Detective Greenwalt verified the information received as to the residence of MacNamee and MacNamee's use and ownership of a tan Toyota. On June 22, 1989, Detective Greenwalt received further information from CI–2 that CI–2 [had] overheard a conversation in which it was inferred that Co–Defendant MacNamee would be leaving later that same day to obtain a large quantity of PCP.

As a result of the information provided by both confidential informants, Detective Greenwalt and Agent Cohen

conducted a surveillance of Co–Defendant MacNamee's residence during the afternoon hours of June 22, 1989. At approximately 6:40 p.m. on that day, Co–Defendants Diane MacNamee and Edward Mango, were followed to the Boat House Restaurant, Media, and then north on the Media Bypass to the Township Line Road area. There MacNamee dropped off Mango and proceeded to the Clover parking lot located on Township Line Road in Haverford Township, Delaware County, PA. Shortly thereafter, Detective Jack Azpell observed the Defendant (consistent with the description given by CI–1) meet with Co–Defendant MacNamee and deliver to Co–Defendant MacNamee items in a brown paper bag. After observing the contact between Co–Defendant MacNamee and Defendant, the officers followed MacNamee, who picked up Mango, to the area of Old State Road and Providence Road in Upper Providence, Delaware County. At that time, the officers stopped Co–Defendant MacNamee's vehicle believing that they [had] observed the delivery of a large quantity of PCP at the Clover parking lot based upon the information provided by the confidential informants, the corroborative investigation and observations of the detectives.

As officers approached the vehicle, the very strong odor of PCP emanated from within the vehicle, both MacNamee and Mango were removed from the car and a brown paper bag was observed on the passenger side floor. Inside the bag was a large plastic zip lock bag containing 330 packets of PCP. Co–Defendants MacNamee and Mango were arrested at the scene, and an arrest warrant was issued for Defendant Phyllis Mickens [for her participation in the delivery of PCP on June 22, 1989].

Trial Court Opinion at pp. 1–4.[2]

Appellant asserted in a pre-trial suppression motion that the police had acted unconstitutionally when, without a

---

**2.** Appellant was not arrested until October 17, 1989, almost four months after the commission of the alleged offenses and the arrest of her co-conspirators.

search warrant, they stopped, searched and seized from Diane McNamee's tan Toyota automobile a package containing in excess of one hundred (100) grams of PCP. The trial court refused to suppress the seized PCP, holding that, by delivering the drugs to McNamee, appellant had abandoned possession thereof and, consequently, lacked standing to contest the search of McNamee's vehicle. Appellant now argues that she had automatic standing pursuant to the Pennsylvania Supreme Court's holding in *Commonwealth v. Sell*, 504 Pa. 46, 470 A.2d 457 (1983), because she was charged with possessory offenses.

In *Commonwealth v. Sell, supra,* the Supreme Court of Pennsylvania, pursuant to Article I, section 8, of the Pennsylvania Constitution, retained the rule of automatic standing to contest a search where the defendant was charged with a possessory offense. In so holding, however, the Court elaborated that "personal possessions remain constitutionally protected under Article I, section 8 *until their owner meaningfully abdicates [her] control, ownership or possessory interest therein." Commonwealth v. Sell, supra,* 504 Pa. at 67, 470 A.2d at 469 (emphasis added). In the instant case, appellant did not have automatic standing to contest the search, for she had delivered possession of the PCP to another person. In *Commonwealth v. Rodriquez,* 385 Pa.Super. 1, 559 A.2d 947 (1989), the Superior Court held that after a defendant had abandoned property, the automatic standing rule of *Sell* was no longer applicable to such property. The Court reasoned:

> It is well-established that "no one has [ ] standing to complain of a search and seizure of property that he has voluntarily abandoned." *Commonwealth v. Shoatz,* 469 Pa. 545, 553, 366 A.2d 1216, 1220 (1976); *Commonwealth v. Cihylik,* 337 Pa.Super. 221, 226–28, 486 A.2d 987, 990 (1985). "The test for abandonment is whether the complaining party could retain a reasonable expectation of privacy in the property allegedly abandoned." *Commonwealth v. Sero,* 478 Pa. 440, 452, 387 A.2d 63, 69 (1978);

*Cihylik, supra* [337 Pa.Super.] at 226–28, 486 A.2d at 990.

*Commonwealth v. Rodriquez, supra,* 385 Pa.Superior Ct. at 4–5, 559 A.2d at 948–949.

Appellant argues that there was no evidence that she had intended to abandon her possessory interest in the PCP delivered to McNamee. The evidence at the suppression hearing established, however, that, upon delivering the drugs to McNamee, appellant and McNamee went their separate ways. Appellant was not present when police stopped, searched and seized from McNamee's vehicle the PCP which appellant had earlier delivered to McNamee. It is abundantly clear, therefore, that appellant had abandoned both possession and control over the PCP and could no longer have any reasonable expectation of privacy with respect thereto. The trial court properly concluded from the evidence that appellant had abandoned the drugs and, therefore, lacked standing to contest the stop and search of McNamee's vehicle. See: *Commonwealth v. Bulling,* 331 Pa.Super. 84, 101–104, 480 A.2d 254, 263–264 (1984) (defendant lacked standing to contest seizure by police of heroin which he had sold to another and credit cards which he had voluntarily discarded).

Appellant next challenges the denial of a pre-trial motion to discover the identity of the confidential informants who had provided information to police regarding her involvement in prior drug transactions with McNamee. She contends that she was misidentified by police as a participant in the June 22, 1989 drug transaction for which she was arrested and that, had the identity of the informants been disclosed, the confidential informants may have provided testimony that appellant was not the person referred to as Phyllis who, assertedly, had been a participant in drug transactions with McNamee. The trial court rejected appellant's request for disclosure after concluding that appellant had failed to establish that the informants could provide information so essential as to outweigh the Common-

wealth's interest in protecting the flow of information from confidential sources.

A qualified privilege exists which "permits the Commonwealth 'to refrain from disclosing the identity of an informer' and 'limits the prosecution's duty to make available to the defense the names and whereabouts of all material eyewitnesses.'" *Commonwealth v. Speaks,* 351 Pa.Super. 149, 159, 505 A.2d 310, 315 (1986), quoting *Commonwealth v. Carter,* 427 Pa. 53, 55–56, 233 A.2d 284, 285 (1967). Regarding this privilege, it has been said that:

> There is no fixed rule with respect to disclosure of an informant. "The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors." *Commonwealth v. Carter,* 427 Pa. 53, 59, 233 A.2d 284, 287 (1967), quoting *Roviaro v. United States,* 353 U.S. 53, 60–62, 77 S.Ct. 623, 627–628, 1 L.Ed.2d 639, 645–46 (1957). See also: *Commonwealth v. Pritchett,* 225 Pa.Super. 401, 406, 312 A.2d 434, 437 (1973). Before disclosure of an informant's identity will be required, "... more is necessary than a mere assertion by the defendant that such disclosure might be helpful in establishing a particular defense.... Although the defendant plainly cannot be expected to show that such information will actually be helpful to his defense, the record should at least suggest a reasonable possibility that the information might be helpful, so that it would be unfair to withhold it." *Commonwealth v. Herron,* 475 Pa. 461, 466–67, 380 A.2d 1228, 1230 (1977). See also: *Commonwealth v. Pritchett,* supra, 225 Pa.Super. at 407–08, 312 A.2d at 438.

*Commonwealth v. Knox,* 273 Pa.Super. 563, 568, 417 A.2d 1192, 1194 (1980). See also: *Commonwealth v. Herron,* 475 Pa. 461, 380 A.2d 1228 (1977); *Commonwealth v.*

*Garvin,* 448 Pa. 258, 266–268, 293 A.2d 33, 38–39 (1972); *Commonwealth v. Delligatti,* 371 Pa.Super. 315, 325, 538 A.2d 34, 39 (1988).

 In *Commonwealth v. McGinn,* 251 Pa.Super. 170, 380 A.2d 431 (1977), situations which might compel the disclosure of a confidential informant's identity were described in the following manner:

> Before the Commonwealth will be forced to reveal an informant's identity, there must be some showing that revelation is necessary. For example, the informant's identity may be necessary to the defense where the evidence against the defendant proceeds solely from the testimony of police officers, and the only relatively neutral eyewitness to the crime is the informant. See *Commonwealth v. Carter,* 427 Pa. 53, 233 A.2d 284 (1967). Other situations where the informant's identity would be helpful are where the defendant alleges entrapment or where there is an identification issue. See *Commonwealth v. Williams,* [236 Pa.Super. 184, 345 A.2d 267 (1975)].

*Id.,* 251 Pa.Superior Ct. at 173, 380 A.2d at 433. See: *Commonwealth v. Washington,* 463 Pa. 206, 344 A.2d 496 (1975); *Commonwealth v. Lloyd,* 427 Pa. 261, 234 A.2d 423 (1967). See also: *Commonwealth v. Davis,* 318 Pa.Super. 507, 514–515, 465 A.2d 669, 672 (1983); *Commonwealth v. Fox,* 267 Pa.Super. 341, 347, 406 A.2d 1072, 1075 (1979). Conversely, when an informant has not been an eyewitness to and has no firsthand knowledge of the criminal transaction at issue, the need for disclosure is greatly reduced. See: *Commonwealth v. Redmond,* 395 Pa.Super. 286, 314–315, 577 A.2d 547, 561 (1990) (Kelly, J. dissenting), *alloc. granted,* 526 Pa. 632, 584 A.2d 315 (1990). See and compare: *Commonwealth v. Herron, supra* 475 Pa. at 469 & n. 3, 380 A.2d at 1231–1232 & n. 3; *Commonwealth v. Culberson,* 467 Pa. 424, 429–430, 358 A.2d 416, 418 (1976); *Commonwealth v. Garcia,* 261 Pa.Super. 296, 300, 396 A.2d 406, 408 (1978). It has also been held that a defendant may not insist upon disclosure of the identity of a confidential infor-

mant where such disclosure would jeopardize the safety of the informant. See: *Commonwealth v. Miller*, 513 Pa. 118, 133, 518 A.2d 1187, 1195 (1986); *Commonwealth v. Bruner*, 388 Pa.Super. 82, 95, 564 A.2d 1277, 1283 (1989).

The record in the instant case is clear that the informants did not witness the June 22, 1989 drug transaction for which appellant was being prosecuted. Rather, the two informants had told police that someone named Phyllis had been involved in prior drug transactions with Diane McNamee. At appellant's trial, the Commonwealth did not introduce evidence regarding information provided by the informants. In fact, there was no reference whatsoever to the existence of informants. The Commonwealth's trial evidence was limited to the events of June 22, 1989. Appellant's participation in the drug transaction on that day was established solely upon identification testimony by police officers who witnessed the transaction. There was also evidence that one of the vehicles involved in the transaction had been registered to appellant.

After careful review, we discern no error in the trial court's refusal to order the disclosure of the identity of the two confidential informants. These informants did not witness the events for which appellant was being prosecuted and did not have direct knowledge as to whether appellant was, in fact, the person who had delivered PCP to co-conspirator McNamee on June 22, 1989. Any knowledge the informants had regarding prior drug transactions between someone named Phyllis and McNamee would have been of doubtful relevance and would have introduced collateral and potentially prejudicial issues into the trial.[3] The trial court did not err by refusing to compel disclosure of the informants.

The standard to be employed in evaluating claims of ineffective assistance of counsel was stated by the Pennsyl-

3. At the suppression hearing, the Commonwealth also offered the opinion of Detective Greenwalt that disclosure of the identity of the informants would have endangered the informants and impeded several ongoing investigations.

vania Supreme Court in *Commonwealth v. Durst*, 522 Pa. 2, 559 A.2d 504 (1989), as follows:

The threshold inquiry in such claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim. *Commonwealth v. Pursell*, 508 Pa. 212, 495 A.2d 183 (1985). If this threshold is met, it must next be established that the particular course chosen by counsel had no reasonable basis designed to effectuate his client's interests. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Finally, we require that the defendant establish how counsel's commission or omission prejudiced him. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

*Id.*, 522 Pa. at 4–5, 559 A.2d at 505. See also: *Commonwealth v. Rollins*, 525 Pa. 335, 344, 580 A.2d 744, 748 (1990); *Commonwealth v. Davis*, 518 Pa. 77, 83, 541 A.2d 315, 318 (1988). To establish prejudice under this standard "requires [a] showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). See also: *Commonwealth v. Pierce*, 515 Pa. 153, 157–158, 527 A.2d 973, 974–975 (1987); *Commonwealth v. Gainer*, 397 Pa.Super. 348, 352, 580 A.2d 333, 335 (1990) (en banc). Additionally, "[b]ecause the law presumes that counsel is effective, the burden of establishing ineffectiveness rests with appellant." *Commonwealth v. House*, 371 Pa.Super. 23, 28, 537 A.2d 361, 363 (1988). See also: *Commonwealth v. Floyd*, 506 Pa. 85, 90, 484 A.2d 365, 367 (1984); *Commonwealth v. McKendrick*, 356 Pa.Super. 64, 71, 514 A.2d 144, 148 (1986).

Appellant contends that trial counsel was ineffective for failing to present character evidence on her behalf. In support of this claim, appellant called five witnesses at the post-trial evidentiary hearing, all of whom said that they would have been available to testify as to appellant's good

reputation in the community if they had been contacted by trial counsel to do so. Appellant testified herself at the post-trial hearing that counsel had not informed her of her right to call character witnesses and had failed to make any attempt to identify character witnesses. However, when trial counsel was given the opportunity to explain his failure to utilize character witnesses at appellant's trial, he told a markedly different story. He testified as follows at the evidentiary hearing:

Q. Now, Mr. Chupein, from the time period of the suppression through the commencement of trial in this matter, at some point did you have occasion to discuss with the Defendant the potential use or definition of character witnesses?

A. I recall conversing with Phyllis—now this would have been in my office. It was a conference which took place in my office, asking her if she was a member of any particular churches or other house of worship, whether she was a member of any social groups because I was interested in ascertaining whether there were people who were aware of any reputation—good reputation she had in the community for being honest and morale [sic] and truthful and law-abiding. Phyllis, I think, was a person—from what I recall, the information I gathered, the impression I drew from it was Phyllis was a person who was well liked by a lot of people because of her position operating a small delicatessen type store. Had a lot of people coming in and out and react—interacted with them very well. But my impression was that there was no one who was not a family member who could be identified as a person who would be appropriate for character testimony. That is, someone not expressing their own personal opinion but rather their knowledge of her reputation in the community.

Q. And, sir, from that last answer, can we take it that you drew a dichotomy between family members and non-family members with regard to character witnesses?

A. Well the non-character witnesses, the alibi witnesses who were being presented who were family members, Rovella Davis and Tonette Jones, both were—I didn't even think to use them as character witnesses frankly. They were being offered for the purpose of supporting the misidentification defense and that's what I restricted my use of those witnesses to, that issue alone.

Q. And with regard to their possible use as character witnesses, what if any significance did you attach to the fact that they were family members and employees of this Defendant?

A. My recollection of the decision made with regard to character evidence is once I had determined that there was no person who did not have a relationship of blood relationship with the Defendant, that I abandoned the use of character evidence.

Q. Why is that, sir?

A. Well by way of practice, you know, you have a few guidelines you go by and one of them I've always ascribed to is that character evidence, the absence of anyone who is—has the appearance of being unbiased and unprejudiced and detached from the Defendant. I believe you need that kind of person in the case in order to give your character evidence any real credibility, any real viability. And the use of the family witnesses who were testifying not only—not only as to the misidentification defense but further as to the character, I did not think enhanced their utility as witnesses.

N.T. 10/8/90 at pp. 9–11.

■ A lawyer has a duty to "keep the accused fully informed of all options throughout the proceedings." *Commonwealth v. Saxton*, 516 Pa. 196, 200, 532 A.2d 352, 354 (1987). Additionally, the failure by counsel "to investigate potentially meritorious defenses, and/or to interview witnesses whose testimony could prove beneficial and exculpatory to the defendant's case, can constitute ineffective assistance of counsel if no reasonable basis otherwise exists for counsel's failure." *Commonwealth v. Anderson*, 501

Pa. 275, 287, 461 A.2d 208, 214 (1983). Therefore, a lawyer who fails to use character evidence on a defendant's behalf can indeed be deemed constitutionally ineffective if there is no reasonable basis for such failure. See, e.g.: *Commonwealth v. Simler*, 320 Pa.Super. 342, 467 A.2d 355 (1983); *Commonwealth v. Luther*, 317 Pa.Super. 41, 463 A.2d 1073 (1983). However, "[a] decision by counsel not to take a particular action does not constitute ineffective assistance if that decision was reasonably based, and was not the result of sloth or ignorance of available alternatives." *Commonwealth v. Collins*, 519 Pa. 58, 65, 545 A.2d 882, 886 (1988). "The decision not to present a particular defense is a tactical one and will not be deemed ineffective stewardship if there is a reasonable basis for that position." *Commonwealth v. Blair*, 491 Pa. 499, 506, 421 A.2d 656, 660 (1980).

■ In the instant case, the critical issue is whether trial counsel had a reasonable basis for failing to present character witnesses at appellant's trial. It has been said that " 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.' " *Commonwealth v. Lee*, 401 Pa.Super. 591, 600–601, 585 A.2d 1084, 1089 (1991), quoting *Strickland v. Washington, supra*, 466 U.S. at 690–691, 104 S.Ct. at 2068, 80 L.Ed.2d at 695. In order to hold that counsel was constitutionally ineffective " 'it must be determined that, in light of all the alternatives available to counsel, the strategy actually employed was so unreasonable that no competent lawyer would have chosen it.' " *Commonwealth v. Dunbar*, 503 Pa. 590, 596, 470 A.2d 74, 77 (1983), quoting *Commonwealth v. Miller*, 494 Pa. 229, 233, 431 A.2d 233, 234 (1981). "The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record." *Commonwealth v. Dunbar, supra*. When these principles are applied to the facts of this case, we are forced to conclude that trial counsel

acted in a constitutionally effective manner. The post-trial testimony of trial counsel, which was found credible by the trial court, demonstrated that counsel had not been ignorant of the option of calling character witnesses, and, indeed, had discussed with appellant this option. It was only after learning from appellant that available character witnesses were relatives of the accused that counsel declined to present such witnesses because, according to his experience, family members generally lacked credibility as character witnesses due to their obvious bias in favor of the accused. Counsel also explored with appellant the possibility of presenting neighbors and patrons of her grocery store as character witnesses, but was discouraged from this course of action by appellant's responses. These responses revealed that neighbors and patrons of the store were not familiar with appellant's reputation in the community and were able to do no more than express their personal opinions regarding appellant. Because counsel's decision not to present character witnesses was made after consultation with appellant and was based upon appellant's responses to counsel's inquiries and counsel's experience as a trial lawyer, the trial court could properly conclude that counsel's performance was reasonable.[4] Appellant's claim of ineffectiveness, therefore, must fail.

█ Appellant's remaining arguments that trial counsel was ineffective are based upon counsel's failure to object to allegedly erroneous portions of the trial court's charge to the jury. The standard for evaluating a jury charge has been stated as follows:

"In reviewing jury instructions to determine whether reversible error has been committed by a trial court, we consider the charge as a whole. Error will not be predicated on isolated excerpts. Rather, it is the general effect of the charge that controls." *Commonwealth v.*

4. We observe that of the five character witnesses offered by appellant at the post-trial hearing three were close family members (appellant's daughter, sister and niece), and the other two had not been identified pre-trial as possible character witnesses available to testify at trial.

*Myers,* 376 Pa.Super. 41, 50, 545 A.2d 309, 314 (1988). See also: *Commonwealth v. Ohle,* 503 Pa. 566, 582, 470 A.2d 61, 70 (1983), *cert. denied,* 474 U.S. 1083, 106 S.Ct. 854, 88 L.Ed.2d 894 (1986); *Commonwealth v. Riggins,* 374 Pa.Super. 243, 253, 542 A.2d 1004, 1009 (1988). "Even if the court erred when it instructed the jury, we will reverse only if the error prejudiced the appellant." *Commonwealth v. Klinger,* 369 Pa.Super. 526, 540, 535 A.2d 1060, 1066 (1987). See also: *Commonwealth v. Riggins, supra.* Moreover, "[t]he trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration." *Commonwealth v. Prosdocimo,* [525] Pa. [147], [150], 578 A.2d 1273, 1274 (1990). See also: *Commonwealth v. LaMassa,* 367 Pa.Super. 54, 58, 532 A.2d 450, 452 (1987); *Commonwealth v. Cimorose,* 330 Pa.Super. 1, 10, 478 A.2d 1318, 1323 (1984).

*Commonwealth v. Bowers,* 400 Pa.Super. 377, 392, 583 A.2d 1165, 1172–1173 (1990).

The claim that the trial court, in its jury charge, confused appellant's role in the conspiracy with that of McNamee is based solely upon an isolated misstatement in the charge in which the court apparently confused the type of vehicles owned by appellant and McNamee. The court said that appellant was "charged with having conspired with the occupant of that Pontiac." In fact, appellant's car was the Pontiac and McNamee owned a Toyota. Apparently realizing its misstatement, the trial judge thereafter said to the jury that "the overt act is delivering the package ... into this other automobile. I think it was a Toyota, but it's what you think, not what I think." On numerous other occasions throughout the charge, the court instructed that it was the jury's recollection of the facts which was controlling and that it was solely for the jury to determine the facts. In all other respects the charge on conspiracy was error free, and, when viewed in its entirety, the isolated misstatement by the court can only be deemed insignificant. It did not so affect the charge that appellant was in any way prejudiced

by the court's misstatement regarding the cars. Under these circumstances, appellant is not entitled to a new trial.

Equally lacking in merit is appellant's contention that the trial court's charge on reasonable doubt unfairly negated the jury's mercy dispensing power. The trial court's instruction on reasonable doubt was a careful, thorough and correct discussion of the Commonwealth's burden of proving guilt beyond a reasonable doubt. Appellant was not entitled to a charge suggesting that the jury could base its decision on mercy rather than fact. See: *Commonwealth v. Grove*, 363 Pa.Super. 328, 345, 526 A.2d 369, 378 (1987); *Commonwealth v. Hathaway*, 347 Pa.Super. 134, 147, 500 A.2d 443, 449–450 (1985). Counsel clearly was not ineffective for failing to object to the trial court's explanation of the law pertaining to reasonable doubt.

The final issue raised by appellant concerns the imposition of a mandatory minimum sentence pursuant to 18 Pa.C.S. § 7508(a)(4)(iii), which, at the time of appellant's sentencing, on December 3, 1990, provided as follows:

(a) General rule.—Notwithstanding any other provisions of this or any other act to the contrary, the following provision shall apply:

. . . . .

(4) A person who is convicted of violating section 13(a)(14) or (30) of The Controlled Substance, Drug, Device and Cosmetic Act where the controlled substance is methamphetamine or is a salt, isomer or salt of an isomer of methamphetamine or is phencyclidine or is a mixture containing methamphetamine, containing a salt of methamphetamine, containing an isomer of methamphetamine, containing a salt of an isomer of methamphetamine or containing phencyclidine shall, upon conviction, be sentenced to a mandatory minimum term of imprisonment and a fine as set forth in this subsection:

. . . . .

(iii) upon the first conviction when the amount of the substance involved is at least 100 grams: five years in

prison and a fine of $50,000.00 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity and, upon conviction for another offense subject to sentencing under this section: eight years in prison and $50,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity.

18 Pa.C.S. § 7508(a)(4)(iii).[5] Appellant contends that by specifying the weight of the "substance" for purposes of determining sentence, rather than the weight of the "mixture" or "compound" containing the "substance," the legislature intended that only the weight of pure PCP could be used for purposes of determining the applicability of the mandatory sentence provisions of § 7508(a)(4). We disagree. The same issue was decided by the Superior Court in *Commonwealth v. Lisboy,* 392 Pa.Super. 411, 573 A.2d

---

5. The language of 18 Pa.C.S. § 7508(a) was amended by the legislature, effective December 19, 1990, just sixteen (16) days after appellant had been sentenced. The amended version of subsection (a)(4)(iii) now provides as follows:

(a) **General rule.**—Notwithstanding any other provisions of this or any other act to the contrary, the following provisions shall apply:

. . . . .

(4) A person who is convicted of violating section 13(a)(14), (30) or (37) of The Controlled Substance, Drug, Device and Cosmetic Act where the controlled substance is methamphetamine or phencyclidine or is a salt, isomer or salt of an isomer of methamphetamine or phencyclidine or is a mixture containing methamphetamine or phencyclidine, containing a salt of methamphetamine or phencyclidine, containing an isomer of methamphetamine or phencyclidine, containing a salt of an isomer of methamphetamine or phencyclidine shall, upon conviction, be sentenced to a mandatory minimum term of imprisonment and a fine as set forth in this subsection:

. . . . .

(iii) when the aggregate weight of the compound or mixture containing the substance involved is at least 100 grams; five years in prison and a fine of $50,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity; however, if at the time of sentencing the defendant has been convicted of another drug trafficking offense: eight years in prison and $50,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity.
18 Pa.C.S. § 7508(a)(4)(iii), as amended, effective December 19, 1990.

222 (1990), *allocatur granted*, 525 Pa. 655, 582 A.2d 322 (1990). It was there held that for purposes of determining the applicability of the mandatory minimum sentence required by 18 Pa.C.S. § 7508(a)(3) it was the weight of cocaine and mixing agent, and not merely the weight of pure cocaine, which was determinative. Subsequently, in *Commonwealth v. Perez*, 397 Pa.Super. 574, 580 A.2d 781 (1990), another panel of the Superior Court reaffirmed the rationale of *Lisboy* and held that the term "substance" in the mandatory minimum sentencing provisions of § 7508(a)(3) referred not only to pure cocaine, but included any mixture of cocaine or its derivatives with another product. The same rationale is applicable to the nearly identical language of § 7508(a)(4), which includes within its applicability the substance PCP. Despite the Supreme Court's grant of allocatur in *Lisboy* and the subsequent amendment of the statutory language of § 7508(a) to specifically refer to "the aggregate weight of the compound or mixture containing the substance," we continue to adhere to the reasoning in *Lisboy* and *Perez*. It follows that appellant was properly sentenced on the basis that the weight of the mixture containing PCP was 117.5 grams. The Commonwealth was not required to show that the pure PCP in the mixture weighed in excess of 100 grams.

The judgment of sentence is affirmed.