J-S53011-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| PAUL ROBERT MILLER, | : | |
| | : | |
| Appellant | : | No. 1790 WDA 2013 |

Appeal from the PCRA Order October 11, 2013,
Court of Common Pleas, Armstrong County,
Criminal Division at No. CP-03-CR-0000171-2010

BEFORE:  DONOHUE, OLSON and PLATT*, JJ.

MEMORANDUM BY DONOHUE, J.:                   **FILED OCTOBER 1, 2014**

Appellant, Paul Robert Miller ("Miller"), appeals from the order dated October 11, 2013 by the Court of Common Pleas, Armstrong County, dismissing his petition for relief pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46.  For the reasons set forth herein, we reverse.

A summary of the facts of this case is as follows.  In 2001, Miller met his wife, Tammy Miller ("Tammy").  Tammy had two children from previous relationships, a son, Daniel Reesman ("Reesman"), and a daughter, R.M., whom Miller later adopted.  In approximately November 2009, R.M. informed her friend, E.K., that Miller had been making her perform oral sex on him and have sexual intercourse with him.  E.K.'s father notified state police officer, Steven Liston ("Trooper Liston"), of the allegations in February

---

*Retired Senior Judge assigned to the Superior Court.

2010. Trooper Liston interviewed Miller and Tammy at the state police barracks, wherein Miller allegedly confessed to having sexual intercourse and oral sex with R.M. Trooper Liston thereafter filed criminal charges against Miller, including, three counts of involuntary deviate sexual intercourse, 18 Pa.C.S.A. § 3123, three counts of statutory sexual assault, 18 Pa.C.S.A. § 3122.1, three counts of aggravated indecent assault, 18 Pa.C.S.A. § 3125, three counts of indecent assault with a person less than 16 years of age, 18 Pa.C.S.A. § 3126(a)(8), and three counts of corruption of minors, 18 Pa.C.S.A. § 6301(a)(1)(i).

At trial, R.M. testified that Miller began to sexually abuse her in 2008, when she was 13 years old. During her testimony, R.M. provided the following timeline of events. In October 2008, Miller and Tammy showed her a video on how to use a condom. On a Friday evening, towards the end of October 2008, R.M. asked Miller for permission to go glow bowling with her friends. Miller told her that she first had to learn something about sex, and had R.M. put a condom on his penis. After R.M. put the condom on Miller, she was allowed to go bowling. A few weeks later, R.M. asked Miller if she could go to a concert with friends. Miller told R.M. that if she wanted to go to the concert, she had to have sex with him. Miller and R.M. went to her bedroom and had sexual intercourse. In November 2008, Miller required R.M. to perform oral sex on him in order for her to go bowling with her

friends. R.M. testified that Miller had R.M. perform oral sex on him most Friday nights.

R.M. testified that she performed oral sex on Miller approximately 10 times and had sexual intercourse with Miller at least four or five times. R.M. also testified that Miller performed oral sex on her at least once and digitally penetrated her vagina more than once. R.M. testified that these incidents usually occurred around 3:00 p.m. after R.M. got home from school when they were alone. She further provided that the last incident occurred a few days before Christmas 2009 when Miller made R.M. perform oral sex on him.

Trooper Liston also testified at trial on behalf of the Commonwealth. Trooper Liston testified that during his interview with Miller, Miller admitted to downloading a video to show R.M. how to put a condom on. He further testified that Miller admitted to having sexual intercourse with R.M., having R.M. perform oral sex on him, and performing oral sex on R.M. However, Miller told Trooper Liston that he engaged in these activities for R.M.'s benefit to educate her on how to handle herself and what to expect from young men. Miller also explained that he always wore a condom because he was teaching her about sex and wanted to make sure that she knew the boy had a condom on whenever they had sex.

The interview between Trooper Liston and Miller was not recorded and Miller did not sign a statement. However, the Commonwealth presented Corporal Daniel Herr ("Corporal Herr") of the state police in rebuttal to

Miller's case to testify that he was present during Trooper Liston's interview of Miller and corroborated Trooper Liston's testimony.

Miller testified in his own defense. During his testimony, Miller denied the allegations against him and also denied that he admitted to having sexual relations with R.M. Miller attempted to discredit R.M.'s testimony by establishing that R.M. played basketball year round and did not get home until 5:30 on weekdays. Miller also attempted to rule out specific dates by establishing that R.M. had a game on one of the Fridays she alleged these incidents occurred and practice on another.

On August 12, 2010, a jury convicted Miller on all charges. The trial court found Miller to be a sexually violent predator on January 21, 2011. On April 5, 2011, the trial court sentenced Miller to an aggregate sentence of 20 to 40 years of incarceration.

Miller filed a post-sentence motion on April 15, 2011, containing numerous claims of ineffective assistance of counsel. Among these claims were claims that trial counsel, Attorney Preston Younkins ("Attorney Younkins"), was ineffective for failing to call character witnesses at trial, failing to call Holly Mallory ("Mallory") as a fact witness at trial, failing to file a bill of particulars, and failing to prepare for trial and inadequate performance at trial.

At the post-sentence hearing, Miller presented various witnesses to testify in support of his assertion that Attorney Younkins provided ineffective

assistance. First, Miler presented eight character witnesses that were available and willing to testify at trial on Miller's behalf to establish that he had a good reputation in the community, a good reputation for honesty in the community, and a good reputation for high moral standards in the community. N.T., 9/1/11, at 5-22. Miller also presented Mallory to testify that she was available and willing to testify at trial that R.M. told her that she never had intercourse with Miller. *Id.* at 31-32. Finally, Miller presented Dr. Ruth Martin Pisarcik and Daniel Reesman to testify concerning Attorney Younkins' failure to prepare them for trial. *Id.* at 23-28, 33-39. Following the witnesses' testimony, Attorney Younkins testified regarding his trial strategy and the tactical decisions he made at trial. After reviewing and considering the record and testimony, the trial court denied Miller's post-sentence motion on September 12, 2011.

Miller filed a direct appeal to this Court on October 7, 2011 raising a sufficiency of the evidence claim and four ineffectiveness of counsel claims. On July 27, 2012, we denied Miller's direct appeal as to the sufficiency of the evidence claim and declined to review Miller's ineffectiveness of counsel claims, dismissing the claims without prejudice so that Miller could raise them in a PCRA petition after his direct appeal rights were exhausted.

On March 18, 2013, Miller filed a PCRA petition claiming, as he did in his post-sentence motion, that Attorney Younkins was ineffective for failing to call character witnesses, failing to call fact witnesses, failing to request a

bill of particulars, and failing to prepare for trial and inadequate performance at trial. On June 13, 2013, an evidentiary hearing was held on the PCRA petition. At the PCRA hearing, Miller and the Commonwealth stipulated that the court "take judicial notice of the transcript from the [hearing on] the Post-Sentence Motion held on September 1, 2011" with regard to the eight character witnesses and Attorney Younkins." N.T., 6/13/13, at 4-5. The parties stipulated to the testimony of these witnesses in order to "save the [c]ourt a substantial amount of time" by not rehashing the same issues from the post-sentence hearing. *Id.* at 5. On October 11, 2013, the PCRA court dismissed Miller's PCRA petition. On November 7, 2013, Miller timely filed a notice of appeal.

On appeal, Miller raises the following issues for our review:

1. Did the PCRA [c]ourt err when it denied [Miller's] [PCRA] Petition and determined that [t]rial [c]ounsel was not ineffective for failing to investigate or call character witnesses on behalf of [Miller]?

2. Did the PCRA [c]ourt commit an error of law when it determined that [t]rial [c]ounsel was not ineffective for failing to investigate or call as [] fact witnesses, Holly Mallory and Roberta Miller, to testify on behalf of [Miller]?

3. Did the [PCRA] [c]ourt commit an [e]rror of [l]aw when it determined that [t]rial [c]ounsel was not ineffective for failing to file a Bill of Particulars?

4. Did the [PCRA] [c]ourt commit an error of law when it denied [Miller's] [PCRA] Petition alleging trial counsel's ineffectiveness in his preparation and performance at trial, specifically in regard to the

> testimony of the alleged victim, Dr. Janet Squires, Trooper Liston, Dr. Ruth Martin[,] and Daniel Reesman?

Miller's Brief at 4. After our review of the record, we find the first two issues to be dispositive.

Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's findings of fact, and whether the PCRA court's determination is free of legal error. ***Commonwealth v. Phillips***, 31 A.3d 317, 319 (Pa. Super. 2011) (citing ***Commonwealth v. Berry***, 877 A.2d 479, 482 (Pa. Super. 2005), *appeal denied*, 42 A.3d 1059 (Pa. 2012)). A PCRA petitioner must establish the claim by a preponderance of the evidence. ***Commonwealth v. Gibson***, 925 A.2d 167, 169 (Pa. 2007). Credibility determinations made by the PCRA court are binding on this Court where there is support in the record for the determination. ***Commonwealth v. Timchak***, 69 A.3d 765, 769 (Pa. Super. 2013) (citing ***Commonwealth v. Anderson***, 995 A.2d 1184, 1189 (Pa. Super. 2010)).

On appeal, Miller raises ineffective assistance of counsel claims. "Our longstanding test for ineffective assistance of counsel derives from the standard set by the United States Supreme Court in ***Strickland v. Washington***, 466 U.S. 668 (1984)." ***Commonwealth v. Clark***, 961 A.2d 80, 85 (Pa. 2008). The test for ineffective assistance of counsel requires the petitioner to meet a three-prong test: (1) underlying the petitioner's allegation of ineffectiveness, there is a claim of arguable merit; (2)

petitioner's counsel had no reasonable strategic basis for proceeding as he did; and (3) the petitioner was prejudiced by counsel's ineffectiveness. *Id.* Failure to meet any one of the three prongs is fatal to petitioner's claim of ineffectiveness. *Id.*

For his first issue on appeal, Miller argues that the PCRA court erred in determining that Attorney Younkins was not ineffective for failing to call character witnesses at trial. The PCRA court found arguable merit to Miller's claim. However, the PCRA court determined that Miller was not prejudiced by the absence of character witness testimony and therefore, concluded that Attorney Younkins was not ineffective. For the reasons that follow, we disagree.

We begin by noting that "the courts of this Commonwealth have long recognized the importance of character evidence." *In re R.D.*, 44 A.3d 657, 668 (Pa. Super. 2012) (citing *Commonwealth v. Nellom*, 565 A.2d 770, 776 (Pa. Super. 1989)). Character evidence "'is an independent factor which may of itself engender reasonable doubt or produce a conclusion of innocence.'" *In re R.D.*, 44 A.3d at 668 (quoting *Commonwealth v. Luther*, 463 A.2d 1073, 1077 (Pa. Super. 1983)). Therefore, "[t]he failure to present available character evidence may constitute ineffective assistance of counsel." *Commonwealth v. Harris*, 785 A.2d 998, 1000 (Pa. Super. 2001).

In **Commonwealth v. Weiss**, 606 A.2d 439 (Pa. 1992), our Supreme Court held that trial counsel was ineffective for failing to present character evidence at trial. In that case, the appellant shared custody of his four-year-old daughter with his estranged wife. **Id.** at 440. The child lived with the appellant's wife but visited the appellant for several days at a time. **Id.** at 441. After one visit, the appellant's wife discovered a one-inch long cut on the child's vagina and took the child to the emergency room. **Id.** An examining physician observed the one-inch long cut and also discovered a torn hymen. **Id.**

At trial, the child testified that the appellant "woke her up, inserted his finger and his penis into her vagina, put Cheerios in her vagina, and cut her vaginal area with a plastic knife." **Id.** The appellant was convicted of rape, statutory rape, incest, indecent assault, simple assault, endangering the welfare of children, and corruption of minors. **Id.** On appeal, the appellant claimed that trial counsel was ineffective for failing to call character witnesses on his behalf at trial that were willing to testify to the appellant's good character. **Id** at 440-42. Our Supreme Court granted the appellant a new trial after determining that all three prongs of the test for ineffective assistance of counsel were satisfied.

With regard to the first prong of the test for ineffective assistance of counsel, the Court explained:

> In a case such as this, where there are only two direct witnesses involved, credibility of the witnesses is of paramount importance, and character evidence is critical to the jury's determination of credibility. Evidence of good character is substantive, not mere makeweight evidence, and may, in and of itself, create a reasonable doubt of guilt and, thus, require a verdict of not guilty. Appellant's claim, therefore, is not without merit.

*Id.* at 442 (internal citations omitted).

The Court in *Weiss* further determined that trial counsel did not have a reasonable basis for failing to present character witnesses at trial. Trial counsel claimed that he contemplated the use of character testimony but concluded that he could not use the witnesses offered by the appellant. *Id.* Trial counsel admitted that "he never discussed with [the] appellant the possibility of presenting character evidence from [his] family[,]" but rather concluded that he could not use the appellant's relatives as character witnesses because he had preconceived notions that "the jury just thinks [familial character evidence is] garbage." *Id.* at 443. In addition, trial counsel also "could not state with certainty that he contacted all of the names given him by [the] appellant […] [and] by his own admission, did not contact any witnesses until the day before trial." *Id.* at 442-43.

In its opinion, our Supreme Court determined that trial counsel's decision "was not a tactical one made after weighing all of the alternatives, but was based on the fact that he had failed to interview and prepare

potential character witnesses, and consult with his client thereto." *Id.* at 443. The Court concluded:

> In light of the overwhelming need for character evidence in a case such as this, counsel's limited investigation into the quantity and/or quality of potential character witnesses on behalf of appellant, and counsel's prejudice toward familial witnesses, we find no reasonable basis to support trial counsel's decision not to call *any* character witnesses.

*Id.* at 443 (emphasis in original).

Finally, with regard to the third prong of the test for ineffective assistance of counsel, the Court held that in order to establish prejudice, "[the] [a]ppellant must demonstrate that the alternative not selected by counsel offered a substantially greater chance of success than the tactic chosen." *Id.* (citing *Commonwealth v. Saxton*, 532 A.2d 352 (Pa. 1987)). Furthermore, the Court held that in order "[t]o properly determine whether prejudice resulted from the quality of counsel's representation, we must focus on counsel's overall trial strategy and view his performance as a whole." *Weiss*, 606 A.2d at 443 (citing *Saxton*, 532 A.2d at 355).

The Court in *Weiss* determined that there was no overwhelming evidence of guilt, but rather, the evidence "boiled down to [the] appellant's word against the word of his wife and daughter." *Weiss*, 606 A.2d at 443. Given trial counsel's strategy to not "contest the physical findings of sexual abuse, but to focus on the fact that it may have been [the] appellant's wife, not [the] appellant who 'set the whole thing up[,]'" it would have been

beneficial to present character witnesses to bolster the appellant's good character and impeach the wife's character. *Id*. Moreover, the Court held that

> Considering there was no overwhelming evidence of guilt in this case, credibility of the witnesses was of paramount importance, and counsel's error not to employ character witnesses, familial or otherwise, undermined [the] appellant's chances of instilling reasonable doubt in the minds of the jury and resulted in prejudice to [the] appellant.

*Id*. Accordingly, the Court reversed the judgment of sentence and remanded for a new trial. *Id*. at 444.

In *Commonwealth v. Hull*, 982 A.2d 1020 (Pa. Super. 2009), we encountered a case similar to the one presently before this Court. In *Hull*, the appellee was convicted of involuntary deviate sexual intercourse, aggravated indecent assault, indecent assault, indecent exposure, and corruption of minors, involving allegations of sexual acts performed on his adopted daughter. *Id*. at 1022. The appellee filed a PCRA petition alleging ineffective assistance of counsel for failing to present character witnesses at trial. *Id*. The PCRA court found counsel to be ineffective and granted a new trial. *Id*.

On appeal to this Court, we determined that the PCRA court acted within its discretion. First, we concluded that the appellee's claim of ineffective assistance had arguable merit because the only evidence at trial was the victim's testimony of the alleged acts and the victim's brothers who

alleged that they witnessed the sexual acts. *Id.* at 1022-23. Therefore, the issue before the jury was a matter of credibility. *Id.* at 1023.

With regard to the second prong of the test, trial counsel stated that his strategy was to show that the victim and her siblings were lying because they wanted to live with their mother who let them do whatever they wanted to do. *Id.* Trial counsel provided that he chose not to investigate character witnesses because he did not believe the witnesses had any information that was relevant and was also worried about the potential of the Commonwealth to cross-examine the character witnesses regarding the appellee's bad character. *Id.* at 1024-25.

We provided that "[f]or counsel's decision to be reasonable, counsel would have had to investigate the witnesses, determine what they knew about [the] [a]ppellee, and evaluate how that information would help or hurt his trial strategy." *Id.* at 1025 (citing *Weiss*, 606 A.2d at 441-42). After reviewing the record, we determined that

> If counsel had presented character witnesses, such testimony would have been consistent with this strategy because it could have made [the] [a]ppellee's story, that the children were making up these accusations, more believable. By portraying [the] [a]ppellee as a good man who would emphasize morals and discipline, counsel would have had an opportunity to enhance his strategy of proving that the children had a motivation to lie about their accusations.

*Id.* at 1023-24. Furthermore, we determined that the record established that trial counsel had no indication that any of the character witnesses had bad-character evidence against the appellee. *Id.* at 1025. As a result, we concluded that trial counsel did not have a reasonable basis for failing to investigate

Finally, we concluded that the appellee was prejudiced by trial counsel's failure to present character witnesses because "[e]vidence of [the] [a]ppellee's good character, particularly in the absence of any bad-character evidence outside of the children's testimony, would have bolstered his defense." *Id.* at 1026 (citations omitted). "[T]hus, by bolstering [the] [a]ppellee's credibility, the jury would have been more likely to consider his theory that the children falsified the allegations. Counsel's inaction, however, caused the jury to weigh only [the] [a]ppellee's and his wife's testimony against the children's." *Id.* at 1027. Accordingly, we concluded that the appellee satisfied all three prongs of the test for ineffective assistance of counsel and affirmed the PCRA court's decision to grant a new trial. *Id.* at 1027-28.

Turning to the instant matter, Miller was convicted of various charges based upon R.M.'s testimony of the assaults and testimony by two state police officers that alleged Miller, in an undocumented confession, admitted to committing acts of sexual assault. Thus, much like the cases discussed *supra*, the crux of this case was credibility. Nevertheless, like trial counsel in

the aforementioned cases, Attorney Younkins failed to present character witnesses at trial. We are now asked to determine whether Miller received ineffective assistance as a result of Attorney Younkins' failure to present character witnesses.

With regard to the first prong of the **Strickland** test for ineffective assistance of counsel, we conclude that Miller presented an issue of arguable merit. Here, as in **Weiss** and **Hull**, the credibility of the witnesses was of paramount importance since there were only two direct witnesses, R.M. and Miller. Thus, "character evidence [was] critical to the jury's determination of credibility." **Weiss**, 606 A.2d at 442.

Attorney Younkins testified at the post-sentence hearing that while he agreed that character witnesses could be important when credibility is at issue, he admitted that he did not have any discussions with Miller regarding potential character witnesses in this case. N.T., 9/1/11, at 43. This Court previously determined that "[a] claim that trial counsel did not conduct an investigation or interview known witnesses presents an issue of arguable merit where the record demonstrates that counsel did not perform an investigation." **Commonwealth v. Stewart**, 84 A.3d 701, 712 (Pa. Super. 2013) (citations omitted). In this case, Attorney Younkins admittedly failed to conduct an investigation or interview potential character witnesses. Accordingly, we conclude that Miller has presented a claim of arguable merit, thereby satisfying the first prong of the **Strickland** test.

With regard to the second prong of the test, this Court has held:

> A lawyer has a duty to 'keep the accused fully informed of all options throughout the proceedings.' Additionally, the failure by counsel 'to investigate potentially meritorious defenses, and/or to interview witnesses whose testimony could prove beneficial and exculpatory to the defendant's case, can constitute ineffective assistance of counsel if no reasonable basis otherwise exists for counsel's failure.' Therefore, a lawyer who fails to use character evidence on a defendant's behalf can indeed be deemed constitutionally ineffective if there is no reasonable basis for such failure. However, '[a] decision by counsel not to take a particular action does not constitute ineffective assistance if that decision was reasonably based, and was not the result of sloth or ignorance of available alternatives.' 'The decision not to present a particular defense is a tactical one and will not be deemed ineffective stewardship if there is a reasonable basis for that position.'

**Commonwealth v. Jones**, 636 A.2d 1184, 1189 (Pa. Super. 1994) (internal citations omitted) (citing **Commonwealth v. Mickens**, 597 A.2d 1196, 1203 (Pa. Super. 1991)).

When questioned regarding his trial strategy in this case, Attorney Younkins responded as follows:

> Basically it came down to an issue of credibility. [] Miller denied the allegations being made against him by his adoptive daughter. So it was basically an issue of tried [*sic*] to address some issues about her credibility and basically having [] Miller testify as to his recollection of these non-incidents.

N.T., 9/1/11, at 42-43. Attorney Younkins further testified that he made a tactical decision not to include character witnesses. **Id.** at 61, 64-65; N.T.,

6/13/13, at 53. Attorney Younkins explained that he made a judgment call that Miller's credibility did not require character witnesses because his concern was not so much with Miller's credibility versus the credibility of R.M., but rather, "[his] concern was [] Miller's credibility versus the State Police who testified that he had made an admission to them." *Id.* After reviewing the record, we conclude that Attorney Younkins did not have a reasonable basis for failing to investigate and present character witnesses at trial.

First, there is no support in the record for Attorney Younkins' assertion that it was his trial tactic not to include character witnesses. Attorney Younkins' decision "was not a tactical one made after weighing all of the alternatives, but was based on the fact that he failed to interview and prepare potential character witnesses, and consult with his client thereto." *Weiss*, 606 A.2d at 443. As stated above in *Hull*, trial counsel is required to investigate character witnesses and evaluate how the information they possess would help or hurt his trial strategy. *Hull*, 982 A.2d at 1025. In this case, Attorney Younkins admittedly failed to investigate character witnesses or evaluate what those witnesses knew about Miller or how their testimony would influence the jury. N.T., 9/1/11, at 43.

Second, the record reflects that Attorney Younkins failed to take any action in furtherance of his trial strategy. In fact, Attorney Younkins' failure to investigate and call character witnesses at trial is in direct opposition to

his strategy of challenging the credibility of either R.M. or the police officers, or bolstering Miller's own credibility. As in *Hull*, presenting testimony of character witnesses establishing that Miller had a reputation for honesty and high moral standards could have made Miller's claims that he did not commit the acts or confess to the police more credible. *See id.* at 1023-24. Accordingly, we conclude that Attorney Younkins did not have a reasonable basis for failing to call character witnesses at trial, thereby satisfying the second prong of the *Strickland* test.

Finally, we must determine whether Miller was prejudiced by Attorney Younkins' failure to present character witnesses. This Court previously held:

> To satisfy the prejudice prong of [the ineffective assistance of counsel] test when raising a claim of ineffectiveness for the failure to call a potential witness at trial, our Supreme Court has instructed that the PCRA petitioner must establish that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew, or should have known, of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Wantz*, 84 A.3d 324, 331 (Pa. Super. 2014) (citing *Commonwealth v. Sneed*, 45 A.3d 1096, 1108-09 (Pa. 2012) (citations omitted)).

In this case, Miller satisfied the first four elements of the test. Miller presented eight character witnesses at the PCRA hearing who testified that

they were available and would have testified at trial on Miller's behalf if they were contacted to do so. Had Attorney Younkins considered using character witnesses and discussed character witnesses with Miller, Miller could have provided Attorney Younkins with these witnesses. Thus, the only remaining issue is whether Miller satisfied the fifth element of the test by establishing that the absence of the character witnesses' testimony was so prejudicial as to have denied him a fair trial.

To establish prejudice that is so prejudicial as to deny a fair trial, the petitioner must "show that the witness's testimony would have been **helpful to the defense**." **Sneed**, 45 A.3d at 1109 (emphasis in original) (citing **Commonwealth v. Auker**, 681 A.2d 1305, 1319 (Pa. 1996)). A witness's testimony is beneficial or helpful to the defense if "it would have created a reasonable probability of a different outcome at trial." **Wantz**, 84 A.3d at 333.

Here, the PCRA court determined that Miller was not prejudiced by the absence of character witness testimony. PCRA Court Opinion, 10/11/13, at 9. The PCRA court held that because R.M.'s testimony was convincing and two state troopers testified that Miller confessed to engaging in sexual acts with the victim, the evidence "far overwhelmed the defense's case" such that "[there] is no reasonable probability that the character witnesses' testimony would have changed the outcome of the trial." **Id.** After a review of the record, we disagree.

"The rationale for the admission of character testimony is that an accused may not be able to produce any other evidence to exculpate himself from the charges he faces except his own oath and evidence of good character." *Commonwealth v. Johnson*, 27 A.3d 244, 248 (Pa. Super. 2011) (citing *Commonwealth v. Luther*, 463 A.2d 1073, 1077-78 (Pa. 1983)). This is precisely the issue that Miller faced at trial. As previously discussed, the evidence presented against Miller at trial consisted of R.M.'s testimony and testimony by two state police officers regarding an undocumented confession by Miller. In his defense, Miller testified that he did not commit any of the alleged crimes and did not confess to doing so. As such, evidence of Miller's good character would have bolstered his credibility, and in turn, cast doubt on the testimony presented by R.M. and the police. *See Hull*, 982 A.2d at 1026. As a result, there is a reasonable probability that the testimony would have changed the outcome of the trial.

Moreover, as Pennsylvania case law establishes, "character evidence is vital to the jury's determination of credibility, and that by creating a reasonable doubt, that evidence may produce acquittal." *Harris*, 785 A.2d at 1002; *Weiss*, 606 A.2d at 442. Given the importance of credibility in the case at bar, we conclude that character witness testimony would have been beneficial to Miller's defense, and accordingly, Miller was prejudiced by Attorney Younkins' failure to present character witnesses at trial. Therefore, the record does not support the PCRA court's decision.

The Commonwealth argues that introduction of the eight character witnesses at trial would not have affected the outcome of the case, stating, "[a]lthough Miller claims that the character witnesses would have influenced the jury by testifying to his honesty and good moral character, of the eight witnesses, three knew Miller only through business transactions." Commonwealth's Brief at 14. The Commonwealth further noted that "[a] fourth witness, Reverend McFarland, did not even know Miller before the time of his incarceration." *Id.*

Although the Commonwealth's argument suggests that these witnesses did not know Miller well enough to testify with regard to Miller's character, the witnesses' testimony suggests a contrary conclusion. Bruce Allen Klingensmith testified that his interactions with Miller were limited to business. N.T., 9/1/11, at 13. However, Klingensmith knew Miller and his family for 30 years, lives two-tenths of a mile away from Miller, and sees him on a regular basis. *Id.* at 12. Similarly, Linda Breneman testified that she knew Miller by virtue of his business, but provided that her interactions with Miller date back 24 years. *Id.* at 10. Harry Robert Heckman also testified that he knew Miller for all of Miller's life and brought his cars to Miller's business for service. *Id*. at 16. Moreover, despite the fact that their interactions were limited to business, all three of these witnesses testified that they knew of Miller's reputation in the community for honesty and high moral standards. *Id.* at 10-12, 16-17. Additionally, although Reverend

McFarland did not know Miller prior to his incarceration, *id.* at 20, he testified that he knew of Miller's reputation in the community by speaking with other people in the community. *Id.* at 21.

The Commonwealth also ignores the testimony of the remaining four witnesses. William Rearick testified that he knew Miller for most of Miller's life, as Miller grew up in the same neighborhood and continues to live in the same neighborhood as Rearick. N.T., 9/1/11, at 5. Emma Jean Heckman's testimony established that she knew Miller for 30 years, had the opportunity to personally interact with Miller, and knew others in the community who knew Miller. *Id.* at 14. Wayne Clair Miller and Diane Lynn McClafferty testified that Miller was their nephew and that they have known him his entire life. *Id.* at 8, 18. McClafferty further testified that she interacts with other people in the community who know Miller. *Id.* at 18-19. All four of these witnesses testified that in addition to their personal knowledge and interactions with Miller, they knew of Miller's reputation in the community, his reputation for honesty, and his reputation for high moral standards. *Id.* at 6, 8, 14-15, 19.

Viewing the testimony and evidence presented at trial, we do not find persuasive the Commonwealth's argument that introduction of the eight character witnesses at trial would not have affected the outcome of the case. Instead, we conclude that the jury in this case "was precluded from hearing positive and substantial character evidence which, if believed, may have

been sufficient to raise a reasonable doubt and require an acquittal." *Commonwealth v. Glover*, 619 A.2d 1357, 1360-61 (Pa. Super. 1993). As a result, Miller is entitled to relief on this issue.

For his second issue on appeal, Miller argues that the PCRA court erred when it determined that Attorney Younkins was not ineffective for failing to call Holly Mallory ("Mallory") and Miller's mother, Roberta Miller ("Roberta"), as fact witnesses. Miller's Brief at 30-33. Miller asserts that Mallory and Roberta's testimony would have undermined the credibility of R.M. and could have caused reasonable doubt for the jury. *Id.* at 32-33. After our review of the record, we agree with the portion of Miller's argument that the PCRA court erred when it determined that Attorney Younkins was not ineffective for failing to call Roberta as a fact witness.[1]

At the PCRA hearing, Roberta testified that R.M. rarely came home after school because of basketball practice and when she did, Roberta was responsible for getting her off the bus and taking her home. N.T., 6/13/13, at 33-35. Roberta stated that Miller might have picked R.M. up from the bus once or twice. *Id.* at 35. Furthermore, Roberta testified that on the days

---

[1] With regard to Attorney Younkins' failure to call Mallory as a fact witness, we conclude that the record supports the PCRA court's finding that Attorney Younkins' testimony "that he did not know of Mallory's existence as a possible witness or that Mallory had relevant information, to be credible." PCRA Court Opinion, 10/11/13, at 12. As *Wantz* provides, to establish prejudice, Miller must establish that "counsel knew, or should have known, of the existence of the witness." *Wantz*, 84 A.3d at 331 (citing *Sneed*, 45 A.3d at 1108-09). Thus, Miller failed to demonstrate prejudice, and accordingly, failed to establish that counsel was ineffective on this basis.

she got R.M. off the bus, she would stay at the house with R.M. while she did her homework. *Id.* Because Roberta's testimony undermines R.M.'s allegations that these incidents occurred after school when she was alone with Miller, we conclude that Miller's claim has arguable merit.

We also conclude that Attorney Younkins did not have a reasonable strategic basis for failing to call Roberta to testify. When questioned at the post-sentence motion hearing regarding why he did not call Roberta to testify, Attorney Younkins responded that "the problem was that I don't think we could eliminate all possible dates." N.T., 9/1/11, at 52. He further testified that he "wasn't sure narrowing the dates would have provided an alternate theory." *Id.* at 53.

Our Supreme Court has held that "[a] chosen strategy will not be found to have lacked a reasonable basis unless it is proven 'that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.'" *Commonwealth v. Williams*, 899 A.2d 1060, 1064 (Pa. 2006) (citing *Commonwealth v. Howard*, 719 A.2d 233, 237 (Pa. 1998)). In this case, Attorney Younkins failed to establish how omitting Roberta's testimony supported his trial strategy. Instead, the record reflects that Roberta's testimony at trial would have supported Attorney Younkins' overall trial strategy by bolstering Miller's credibility and attacking R.M.'s credibility. Roberta's testimony would have provided the defense with evidence in support of Miller's claim that he did not sexually

assault R.M. by establishing that she was usually not at home after school, and when she was home after school, she was not alone. Moreover, even if Roberta's testimony could not eliminate all possible dates, her testimony would have the effect of diminishing R.M.'s credibility with regard to her claims that she came home from school at 3:00 and that the assaults occurred shortly thereafter.  Therefore, the record reflects that introducing Roberta's testimony at trial would have generated a greater potential for success than omitting the vital evidence that supported the defense would. As a result, we conclude that Attorney Younkins did not have a reasonable strategic basis for failing to call Roberta as a witness at trial.

With regard to third prong of the **Strickland** test, we reiterate that in order to demonstrate that he was prejudiced by Attorney Younkins' failure to call Roberta, Miller must establish:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew, or should have known, of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

**Wantz**, 84 A.3d at 331 (citing **Sneed**, 45 A.3d at 1108-09).

We find the first four elements to be satisfied in this case.  Attorney Younkins admitted that Roberta attended "many of the meetings" prior to trial and knew what Roberta's role was in caring for R.M., including that she was responsible for getting R.M. off of the bus on a number of days.  N.T.,

9/1/11, at 52. Finally, Roberta testified that she was available and willing to testify at trial. N.T., 6/13/13, at 37.

With regard to the fifth element, the PCRA court determined that Attorney Younkins was not ineffective for failing to call Roberta as a witness at trial, because the absence of her testimony was not so prejudicial as to have denied Miller a fair trial.

> The point of [Roberta's] testimony would be to attack the victim's credibility by showing that the sexual assaults that [R.M.] alleged had occurred between 3 p.m. and 5 p.m. at the Miller residence, could not have occurred because the victim was hardly ever home after school and when the victim did come directly home, [Roberta] always got her off the bus and took her in the Miller house to do homework. […]
>
> * * *
>
> However, the main point of [Roberta]'s testimony had already been made by [Miller] at trial. [Miller] testified at length about [R.M.]'s busy basketball schedule, stating that the earliest time [R.M.] would arrive home from school was 5:30 p.m. 'on any weekday.' T.T. at 69. He stressed that [R.M.] was hardly ever home directly after school. He also explained that it was impossible for him to have assaulted [R.M.] after school on the first two Fridays of December 2009 as claimed, pointing out that [R.M.] had had a basketball game one Friday and basketball practice on the other Friday. Thus, the absence of [Roberta]'s testimony was not so prejudicial as to have denied [Miller] a fair trial.

PCRA Court Opinion, 10/11/13, at 13, 15. The record does not support the PCRA court's conclusion.

Our courts have established that

> [i]n a case where virtually the only issue is the credibility of the Commonwealth's witness versus that of the defendant, failure to explore all alternatives available to assure that the jury heard the testimony of a known witness who might be capable of casting a shadow upon the Commonwealth's witness's truthfulness is ineffective assistance of counsel.

*Commonwealth v. Fierst*, 620 A.2d 1196, 1204 (Pa. Super. 1993) (citing *Commonwealth v. Twiggs*, 331 A.2d 440, 443 (Pa. 1975)).

In *Commonwealth v. Matias*, 63 A.3d 807 (Pa. Super. 2013) (*en banc*), the appellee was charged with and convicted of involuntary deviate sexual intercourse, indecent assault, aggravated indecent assault, and corruption of minors following allegations that he sexually assaulted his 13-year-old neighbor ("the victim") on two separate occasions. *Id.* at 809. At trial, the victim claimed that the first incident occurred as she and the appellee's daughter were playing a video game in the appellee's basement. *Id.* at 811. The victim claimed that she was sitting on the couch between the appellee and his daughter when the appellee "reached behind her back and placed his hand down into her pants and rubbed his hand on her bare buttocks." *Id.* However, the victim's testimony at trial differed from her statement to the police and her statement at the preliminary hearing, wherein the victim alleged that she was not in the basement when the appellee sexually assaulted her the first time. *Id.*

- 27 -

Despite the victim's change in testimony, trial counsel did not present the appellee's daughter as a witness at trial. The appellee's daughter would have testified that the appellee only sat on a couch in the basement with her and the victim on one occasion to set up a video game for them. *Id.* at 812. The appellee's daughter would have further testified that after the appellee set up the video game, he left the basement and went upstairs. *Id.*

Following an evidentiary hearing on appellant's PCRA petition, the PCRA court granted the appellee a new trial, finding that counsel provided ineffective assistance for failing to present the appellee's daughter, an eyewitness to the alleged incident, at trial. The PCRA court explained that because the case concerned the victim's word against the appellee's word, the eyewitness testimony "was of critical significance because [the] testimony would contradict [the victim's] testimony." *Id.* at 811. The PCRA court further provided that trial counsel's "course of conduct was without any reasonable basis designed to effectuate [the appellee's] best defense," given the victim's change in testimony and because the witness's testimony completely contradicted the victim's testimony. *Id.* at 811-12. An *en banc* panel of this Court agreed with the PCRA court, concluding that the record supported "the PCRA court's observation that the Commonwealth's case against [the appellee] rested entirely upon the credibility of [the victim], and the PCRA court's determination that the absence of [the witness's] testimony was so prejudicial as to deny [the appellee] a fair trial." *Id.* at 812.

Instantly, as in *Matias*, the core of this case concerned Miller's credibility versus that of R.M. and the police officers. At the PCRA hearing, Attorney Younkins himself acknowledged that credibility was the "whole theme of [the] case." N.T., 6/13/13, at 50. Miller's defense rested upon his assertions that he could not have assaulted R.M. as she claimed because she was rarely home after school because of her basketball schedule. Like the daughter's testimony in *Matias*, Roberta's testimony would have provided a first-hand account from someone other than the defendant that Miller could not have committed these acts as R.M. described because she was not home alone after school. Thus, Roberta's testimony would have directly contradicted R.M.'s assertions that the assaults occurred after school and bolstered Miller's credibility with regard to his arguments and testimony that the assaults could not have occurred as R.M. claimed. Roberta's testimony was therefore capable of casting a shadow upon R.M.'s truthfulness and credibility. Given the importance of credibility in this matter, Roberta's testimony would have been helpful to the defense by diminishing R.M.'s credibility and bolstering Miller's credibility, such that "it would have created a reasonable probability of a different outcome at trial." *Wantz*, 84 A.3d at 333. As a result, we conclude that Miller was prejudiced by Attorney Younkins' failure to call Roberta as a fact witness. Attorney Younkins provided ineffective assistance, thereby requiring relief as requested.

Order reversed. Case remanded for a new trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/1/2014