**UNITED STATES of America**

v.

**Paul J. MANGIARDI, Defendant**

**No. CRIM.4:CR–95–0233,**
**No. CIV.4:CV–00–2024.**

United States District Court,
M.D. Pennsylvania.

May 3, 2002.

George J. Rocktashel, Assistant United States Attorney, Williamsport, PA, for Plaintiff.

Jeffrey C. Dohrmann, Esquire, Rieders, Travis, Humphrey & Harris, Waters & Waffenschmidt, Williamsport, PA, for Defendant.

## MEMORANDUM

MCCLURE, District Judge.

This opinion discusses the sole remaining claim in Paul J. Mangiardi's motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. The only issue before the court is whether Mangiardi's trial counsel provided ineffective assistance of counsel by refusing to allow Mangiardi to testify at trial. The inquiry is straightforward: if Mangiardi proves that counsel refused to let him testify and that he suffered prejudice as a result, counsel was ineffective; if Mangiardi fails to prove either that he was improperly barred from testifying or that he suffered prejudice, then counsel was not ineffective. The court held a two-day hearing in which it heard testimony of Mangiardi, his wife, his sister, and trial counsel. Each person testified to certain interactions between Mangiardi and trial counsel relating to whether counsel improperly refused to let Mangiardi testify. Based on our evaluation of the witnesses' testimony at the hearing, we find that Mangiardi has failed to prove that trial counsel refused to let him testify. For this reason, counsel was not ineffective, and Mangiardi's § 2255 motion will be denied in its entirety.

## BACKGROUND:

Mangiardi's conviction grew out of a scheme to market health benefit plans through several companies that he created, controlled, and operated. While the plans were represented to be fully-funded, self-insured trusts with backup coverage for claims exceeding premium contributions, Mangiardi failed to secure either reinsurance or stop-loss coverage, and he did not have the funds to compensate. Eventually, policy beneficiaries were left with unpaid claims.

Between April 22, 1987, and March 21, 1988, Mangiardi defrauded two elderly women, Ruth Waltman and Reba Fleming, of a total of $371,632.00. He used the proceeds to establish PARCare, a company purported to be engaged in the business of third-party administration of single-employer health plans under the Employee Retirement Income Security Act (ERISA). He issued the women certificates of investment in PARCare.

The purpose of operating PARCare under ERISA was to avoid regulation by the Pennsylvania Insurance Department. But

PARCare failed to comply with ERISA for various reasons, including the failure to establish trusts and trust accounts for each employer and the commingling of funds. The commingling of funds caused the operation to be in the business of insurance, for which neither Mangiardi nor his business was licensed. Also, the business had insufficient capital to operate as an insurance company. The Insurance Department issued a suspension order for PARCare and eventually assumed control of the company. Mangiardi sent his son to Delaware to open a business called 1st Health, and then diverted to 1st Health funds intended for PARCare. Mangiardi entered into a consent decree with the Insurance Department and was permitted to operate a company called West Branch Administrators. Eventually, however, West Branch Administrators went the way of PARCare, for essentially the same reasons.

Mangiardi's operations resulted in large-scale fraud. The plans were generally marketed to small businesses in need of inexpensive health care coverage for employees. In all, more than 5,000 of these employees were covered by the plans during the operation of PARCare, 1st Health, and West Branch Administrators.

After a grand jury returned a 16–count superseding indictment against him, Mangiardi was tried and convicted by a jury. The trial relevant to the instant motion was the second of two trials, which occurred after the first one was declared a mistrial. Mangiardi was represented at trial by Patrick Casey of the Federal Public Defender's Office. Mangiardi did not testify at trial, and at sentencing, he stated that he followed counsel's advice in not taking the stand.

Mangiardi's conviction was affirmed on appeal. After the United States Supreme Court denied Mangiardi's petition for a writ of certiorari, Mangiardi filed a § 2255 motion with this court. On November 27, 2001, we issued an opinion denying each of Mangiardi's claims except for the claim that, despite his wish to testify at trial, counsel refused to let him do so.

Over the course of two days in March, 2002, we held a hearing in which he heard testimony from Mangiardi, his wife, his sister, and trial counsel. The testimony focused on whether trial counsel denied Mangiardi his right to testify and whether Mangiardi suffered prejudice as a result of his failure to testify.

### DISCUSSION:

To succeed on a claim of ineffective assistance of counsel, a defendant must show that (1) the performance of counsel fell below an objective standard of reasonableness; and (2) the errors of counsel prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687–688, 691–692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Both *Strickland* prongs must be satisfied." *George v. Sively,* 254 F.3d 438, 443 (3d Cir.2001) (citing *United States v. Nino,* 878 F.2d 101, 104 (3d Cir.1989)). The defendant bears the burden of establishing ineffective assistance of counsel. *Whitney v. Horn,* 280 F.3d 240, 258 (3d Cir.2002).

The first prong requires the defendant to "establish ... that counsel's performance was deficient." *Jermyn v. Horn,* 266 F.3d 257, 282 (3d Cir.2001). "This requires showing that counsel was not functioning as the 'counsel' guaranteed defendant by the Sixth Amendment." *Id.* (quoting *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052) (internal quotation marks omitted). "In assessing counsel's performance, 'every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the

time.'" *Id.* (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052). "There is a 'strong presumption' that counsel's performance was reasonable." *Id.* "That is to say, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quoting *Berryman v. Morton,* 100 F.3d 1089, 1094 (3d Cir.1996) (in turn quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052)).

The second prong requires the defendant to "demonstrate that he was prejudiced by counsel's errors." *Id.* (citing *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052). "The [movant] must show that 'there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). "A 'reasonable probability' is 'a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). "This standard 'is not a stringent one;' it is less demanding than the preponderance standard." *Id.* (quoting *Baker v. Barbo,* 177 F.3d 149, 154 (3d Cir.1999)). "[A] court must consider the strength of the evidence in deciding whether the *Strickland* prejudice prong has been satisfied." *Buehl v. Vaughn,* 166 F.3d 163, 172 (3d Cir.1999). "'[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" *Id.* (quoting *Strickland,* 466 U.S. at 696, 104 S.Ct. 2052).

Specifically, Mangiardi claims that defense counsel denied him his right to testify. "[T]he right to 'testify on one's own behalf at a criminal trial' is grounded in ... the Constitution." *United States v. Leggett,* 162 F.3d 237, 245 (3d Cir.1998) (quoting *Rock v. Arkansas,* 483 U.S. 44, 51, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)).

"The right is personal and can be waived only by the defendant, not defense counsel." *Id.* (citing *United States v. Pennycooke,* 65 F.3d 9, 10 (3d Cir.1995)). A claim that defense counsel denied a defendant's request to testify is "at least ... colorable." *Id.* at 249 n. 12 (citation omitted). "[T]he appropriate vehicle for claims that the defendant's right to testify was violated by defense counsel is a claim of ineffective assistance of counsel." 9A Fed. Proc., L.Ed. § 22:1423 (2001).

Mangiardi requests that the court find certain facts leading to the conclusion that counsel denied him his right to testify. Mangiardi, his wife, and his sister made statements that, if believed, would support a finding that although Mangiardi wished to testify at trial and counsel was aware of Mangiardi's wishes, counsel prevented him from doing so. According to the Mangiardi family, when Mangiardi expressed to counsel his wish to testify, counsel (1) told Mangiardi a number of times that "you are not going to testify." (Transcript of § 2255 Hearing, Volume One, Rec. Doc. No. 672, at 4–5, 47, 50); and (2) said that he did not plan to call Mangiardi as a witness (*Id.* at 23, 24–25, 26). Mangiardi testified that, although he was aware of a general constitutional right to testify at trial, he was not aware that only the defendant can waive this right or that he could have overruled defense counsel's decision. (*Id.* at 48–49, 53.) Also, according to Mangiardi, defense counsel contributed to this lack of understanding by raising his voice often and stating emphatically, "I'm a lawyer [and] you're the client." (*Id.* at 50.) If true, these statements would prove Mangiardi's claim that counsel denied him his right to testify at trial.

In addition to stating that counsel thwarted his attempts to testify, Mangiardi asserts that he suffered prejudice as a result of his inability to tell his side of the

story. The primary defense theory at trial was that in engaging in the conduct for which he was convicted, Mangiardi acted reasonably on the advice of attorneys who instructed him on the operation of his businesses. A number of those attorneys testified at trial, and, according to Mangiardi, they testified inaccurately about a large number of the interactions they had with him. Mangiardi claims that if he would have testified, he would have corrected the numerous factual inaccuracies offered by the attorneys, and the jury would have been presented with the true nature of the advice the attorneys gave him.

When testifying at the hearing, defense counsel disputed nearly all of Mangiardi's contentions. Specifically, counsel made the following assertions:

- Initially, counsel wanted Mangiardi to testify at trial, but Mangiardi refused to discuss many facts relating to his potential testimony. For example, Mangiardi was unresponsive and even defiant in response to counsel's questions regarding the money he received from Waltman and Fleming. Because Mangiardi would not adequately prepare, counsel believed that it was not in his interest to testify. Although counsel believed at that point that Mangiardi was ill-prepared to testify and that his testifying would hurt his case, counsel never told him that he was not permitted to testify. (Transcript of § 2255 Hearing, Volume Two, Rec. Doc. No. 672, at 47, 52–56, 58—65.)

- Near the end of the defense's case, Mangiardi stated loudly in court that he wished to testify. Counsel and Mangiardi proceeded to a witness room. There, counsel told Mangiardi that he had an absolute right to testify and that they should discuss it if he wished to testify. Mangiardi then said that he did not want to testify. (*Id.* at 15–16, 21.)

- Before resting, counsel asked Mangiardi if he wished to testify, and Mangiardi shook his head and said "no." (*Id.* at 22.)

Undoubtedly, the witnesses at the hearing gave differing versions of the events. Evaluating the witnesses' testimony, we credit counsel's testimony and give no value to the testimony provided by Mangiardi or that offered by his family members. Based on his demeanor in the witness chair, we find Mangiardi to be totally without credibility. In addition, we believe that Mangiardi's wife and sister are naturally biased and otherwise lacking in credibility. Conversely, we find defense counsel to be quite credible, and we believe the statements that he made at the hearing. It is our finding, then, that defense counsel gave Mangiardi every opportunity to testify and that Mangiardi voluntarily declined to exercise his right to testify.

In addition to our credibility determinations at the hearing, we must emphasize that some of Mangiardi's own open-court statements have been directly contrary to his claim. We point to one statement that he made at sentencing and another that he made at the § 2255 hearing discussed in this opinion.

At sentencing, the court gave Mangiardi an opportunity to speak in favor of the mitigation of his sentence. Mangiardi spoke regarding his decision to refrain from testifying:

Thank you, Your Honor. In the course of two lengthy court trials, Your Honor, I took the advice of counsel and elected not to testify. However, it was stated in the courtroom that I hid behind the Fifth Amendment, which I don't believe that that is true, that I did hide behind anything. I just took the advice of the attorney that offered me the advice.

(Transcript of Sentencing Hearing, Rec. Doc. No. 545, at 79.) This statement indi-

cates that Mangiardi took counsel's advice and voluntarily elected to stay off the witness stand. Mangiardi attempts to explain this statement by pointing to another statement he made at sentencing. According to Mangiardi, this statement explains his relationship to counsel:

In the Army I took an oath 40 years ago to support and defend the Constitution of the United States against all enemies, foreign and domestic, and the orders of the Presidents and officers appointed over me. I did so without conviction. I also learned to obey and follow orders of the officers appointed over me. Whether I thought they were right or wrong, I followed those orders.

Rightly or wrongly I brought the same reverence to the officers of the court that I had representing me as attorneys. Believe me, this has changed my mind in its entirety.

(*Id.* at 81–82.) At the § 2255 hearing, Mangiardi contended that his statement about bringing "reverence" to his attorneys implied that he followed defense counsel's order to refrain from testifying at trial. (Transcript of § 2255 Hearing, Volume One, at 144.) We find this after-the-fact assertion to be entirely lacking in credibility.

The other statement that belies Mangiardi's argument came at the § 2255 hearing itself. The prosecutor asked Mangiardi a question about whether defense counsel made it clear to Mangiardi that he had a right to testify:

PROSECUTOR: And on these occasions when you met and discussed [the issue of testifying], Mr. Casey told you that it was your decision to testify, that he could not make that decision for you; isn't that right?

MANGIARDI: But it was also with a stipulation that he didn't want me to testify.

PROSECUTOR: So the answer is yes, Mr. Casey did tell you that it was your decision and your decision alone to take the stand and testify; is that right?

MANGIARDI: Yes, sir, but not—that he did not want me to testify.

(*Id.* at 168–69).

Mangiardi's statements here show that, while defense counsel may have expressed an opinion that it was not in Mangiardi's interest to testify, the decision as to whether to testify was Mangiardi's alone. That this statement is inconsistent with Mangiardi's claim not only serves as an admission that Mangiardi's claim is meritless, but also severely diminishes his credibility as a witness.

We find that counsel did not deny Mangiardi his right to testify at trial. At most, he advised against Mangiardi taking the witness stand. Mangiardi has failed to prove that counsel's performance was deficient. Because we conclude that Mangiardi has not met his burden to show that counsel's performance was deficient, we need not reach the issue of whether he suffered prejudice as a result of counsel's representation. *United States v. Roberson*, 194 F.3d 408, 418–19 (3d Cir.1999) (citations omitted).

### CONCLUSION:

Mangiardi's claim that he was denied the opportunity to testify at trial is meritless. Mangiardi and his family members lack credibility, and defense counsel credibly explained that he did not stop Mangiardi from testifying. Therefore, Mangiardi's claim will be denied. Because the instant claim is the final remaining claim under Mangiardi's § 2255 motion, the motion will be denied in its entirety. All other claims are denied for the reasons set forth in the court's memorandum of November 27, 2001.

An appropriate order follows.

### *ORDER*

For all the reasons set forth in the accompanying memorandum and the memorandum filed November 27, 2001

**IT IS ORDERED THAT:**

1. Defendant Paul J. Mangiardi's motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence (Rec.Doc. No. 624) is denied.

2. There is no basis for the issuance of a certificate of appealability.

3. The clerk is directed to close the case file.