J-S30035-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| STEPHEN MICHAEL HARMER, | : | |
| | : | |
| Appellant | : | No. 1642 MDA 2016 |

Appeal from the PCRA Order September 1, 2016
in the Court of Common Pleas of Lancaster County,
Criminal Division, No(s):  CP-36-CR-0004640-2012

BEFORE:  SHOGAN, RANSOM and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED JUNE 16, 2017**

Stephen Michael Harmer ("Harmer") appeals from the Order dismissing his first Petition filed pursuant to the Post Conviction Relief Act.[1] We affirm.

In its Opinion, the PCRA court set forth the relevant factual and procedural history, which we adopt for the purpose of this appeal.  **See** PCRA Court Opinion, 9/1/16, at 1-7.  Harmer filed a timely Notice of Appeal.

On appeal, Harmer presents the following issues for our review:

A. Whether the PCRA court's determination is supported in the record and free from legal error when trial counsel was ineffective in failing to request standard jury instruction (criminal) 4.01, when [Harmer's] co-defendant testified at trial as the only Commonwealth witness at the scene of the crime?

B. Whether the PCRA court's determination is supported in the record and free from legal error when trial counsel was ineffective in failing to require the Commonwealth to file a

---

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

[Pa.R.E.] 404(b) motion before trial[;] trial counsel did not file a motion *in limine* seeking to bar [Harmer's] prior and subsequent bad acts from being presented to the jury[;] and failing to seek a mistrial and/or curative instruction when the Commonwealth introduced the prior and subsequent bad acts testimony of [Harmer's] drug activity during trial?

C. Whether the PCRA court's determination is supported in the record and free from legal error when the cumulative effect of prejudice from trial counsel's ineffective assistance of counsel in the form of failure to request standard jury instruction (criminal) 4.01[;] failure to require the Commonwealth to file [a] [Pa.R.E.] 404(b) motion before trial[;] failure to file [a] motion *in limine* seeking to bar prior and subsequent bad acts[;] and/or failing to seek a mistrial or curative instruction undermined the truth[-]determining process?

Brief for Appellant at 1-2 (capitalization omitted).

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Further, where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary.

***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

In his first issue, Harmer contends that his trial counsel, Christopher P. Lyden, Esquire ("Attorney Lyden"), was ineffective for failing to "request the accomplice or corrupt and polluted jury instruction found at 4.01 in the Pennsylvania Standard Jury Instruction (Criminal)" after the close of

- 2 -

evidence at trial. Brief for Appellant at 19. Harmer asserts that Attorney Lyden admitted that Cody Wunder ("Cody") was Harmer's accomplice, and that there were components of Cody's testimony that supported a second-degree murder conviction for Harmer. *Id*. at 21-22. Harmer claims that Attorney Lyden also admitted that Cody was the only Commonwealth trial witness who had been at the crime scene at the time of the homicide. *Id*. at 22. Harmer points to Attorney Lyden's proffered reasons for not requesting an instruction, namely, that (1) Cody and his brother, Kyle Wunder, did something completely separate from the other crimes in committing second-degree murder; (2) there was overwhelming evidence of Harmer's involvement as an accomplice to the conspiracy to commit burglary; and (3) Harmer gave a detailed statement to police describing his involvement. *Id*. at 21. Harmer argues that these reasons do not provide a reasonable basis for Attorney Lyden's inaction, and that he suffered prejudice as a result of Attorney Lyden's failure to request an accomplice instruction regarding Cody's testimony. *Id*. at 22-23.

In its Opinion, the PCRA court addressed Harmer's first issue, set forth the relevant law, and determined that the issue lacks merit. *See* PCRA Court Opinion, 9/1/16, at 7-9. We agree with the reasoning of the PCRA court, and affirm on this basis as to Harmer's first issue. *See id*.

In his second issue, Harmer contends that, in response to a question asked by the prosecutor, a Commonwealth witness, Steven Marsch, testified

that he had used heroin with Harmer. Brief for Appellant at 26. Harmer asserts that other "Commonwealth witnesses repeatedly, in their respective testimony, stated that [Harmer] sold marijuana and [Harmer] ingested marijuana." *Id*. at 27. Harmer claims that Attorney Lyden failed to object to this testimony, file a motion *in limine*, seek a curative instruction, raise an issue regarding the Commonwealth's failure to file a Pa.R.E. 404(b)[2] motion regarding such evidence, or request a mistrial. Brief for Appellant at 26-27, 32. Harmer points to Attorney Lyden's explanation for his inaction, namely, that, because he was stipulating that Harmer was guilty of conspiring to commit robbery and burglary, the references to Harmer's drug activities would not add or detract very much from that characterization. *Id*. at 32. Harmer argues that this reason did not provide Attorney Lyden with reasonable basis for not filing a motion *in limine* or requiring the Commonwealth to file a Rule 404(b) motion. *Id*. at 29-10. Harmer contends that he suffered prejudice as a result of Attorney Lyden's inaction, because the testimony regarding his prior drug activities "demonstrated to the jury that [he] had a propensity for committing crimes[,] and that he was a person of bad character …." *Id*. at 32-33.

---

[2] Rule 404(b) pertains to a person's crimes, wrongs and other acts, and provides, in relevant part, that "[i]n a criminal case, the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence the prosecutor intends to introduce at trial." Pa.R.E. 404(b)(3).

In its Opinion, the PCRA court addressed Harmer's second issue, set forth the relevant law, and determined that the issue lacks merit. **See** PCRA Court Opinion, 9/1/16, at 9-10. We agree with the reasoning of the PCRA court, and affirm on this basis as to Harmer's second issue. **See id**.

In his third issue, Harmer contends that, if his first and second claims regarding Attorney Lyden's ineffectiveness fail for lack of prejudice, then he is nevertheless entitled to relief based on the cumulative effect of Attorney Lyden's errors. Brief for Appellant to 33-34. Harmer asserts that the cumulative effect of Attorney Lyden's "inaction created the reasonable probability that the outcome [at] trial would have been different ...." **Id**. at 34-35.

In its Opinion, the PCRA court addressed Harmer's third issue, set forth the relevant law, and determined that the issue lacks merit. **See** PCRA Court Opinion, 9/1/16, at 14-15. We agree with the reasoning of the PCRA court, and affirm on this basis as to Harmer's third issue. **See id**.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/16/2017

- 5 -

IN THE COURT OF COMMON PLEAS
OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :
                                         :

v.                                :     No.  CP-36-CR-4640-2012
                                           :

STEPHEN HARMER                       :

## ORDER AND SUPPORTING MEMORANDUM

BY: REINAKER, J.
SEPTEMBER 1, 2016

### *Introduction*

In 2013, for the robbery and killing of Douglas Herr, a jury found the Defendant guilty of

second degree murder, robbery, criminal conspiracy to commit robbery, burglary, and criminal

conspiracy to commit burglary.[i]  The Court sentenced the Defendant to incarceration for life,

with no possibility of parole.  After an unsuccessful direct appeal, the Defendant filed the instant

petition under the Post Conviction Relief Act ("PCRA"), alleging ineffective assistance of trial

counsel on various grounds.  The Court held a hearing on the petition, and the Defendant

submitted a brief.  For the following reasons, the Court hereby dismisses the petition.

### *Background*

#### *Trial, Sentencing, and Direct Appeal*

At the Defendant's jury trial, his counsel acknowledged in opening statement that the

Defendant "agree[d] and plan[ned] to steal money, and he was there that night to accomplish that

plan." (N.T., 8/6/13, at 153).  But counsel drew a line between the robbery and the killing,

---

[i] 18 Pa.C.S.A. §2501(a), 18 Pa.C.S.A. §3701(a)(1)(i), 18 Pa.C.S.A. §903(a)(1), 18 Pa.C.S.A. §3502(a), and 18 Pa.C.S.A. §903(a)(1), respectively.

saying the killing was "an act of retaliation . . . done out of anger and totally unnecessary to completing this crime." (*Id.*). He said the Defendant was sitting in the truck when the killing occurred, and "didn't participate in any way in the decision to kill this man." (*Id.*). He stressed that the Defendant could only be guilty of second degree murder if the killing was "done in furtherance of the crime." (*Id.* at 154).

The evidence showed the Defendant had learned Herr kept a large amount of money in a safe inside his house. (*Id.* at 270-74). The Defendant plotted with his co-worker, Cody Wunder ("Cody"), to get the money. (N.T., 8/7/13, at 425; N.T., 8/8/13, at 470, 474-81). Another co-worker, Steven Marsch, overheard some of their discussions. (N.T., 8/7/13, at 332-39). The Defendant and Cody eventually let Cody's younger brother, Kyle Wunder ("Kyle"), in on the plan. (N.T., 8/8/13, at 480, 562).

On August 17, 2012, the three gathered guns, masks, gloves, and tools. (*Id.* at 492-96, 498). The Defendant told Cody and Kyle about the layout of Herr's home. (*Id.* at 481-82, 506-07). After learning Herr's relatives were out of the house, they drove there. (*Id.* at 507-09). On the way, the Defendant told Cody and Kyle that if there was a truck behind the house, Herr was "likely home." (*Id.* at 509).

When they got to the house, the Defendant stayed in the truck; he had a broken foot at the time. (N.T., 8/8/13, at 514-16; N.T., 8/7/13, at 434-35). Kyle and Cody approached the house, armed with a shotgun, sledgehammer, and pry bar. (N.T., 8/8/13, at 514-16). They did not know whether Herr was inside, but then they saw the truck. (*Id.* at 517-18). They went inside anyway, forcing entry with the pry bar. (*Id.* at 519-20).

Cody testified for the Commonwealth as to events inside the house. There, they struck Herr with the shotgun and pry bar, and believed he was "out cold." (*Id.* at 520-22). The safe

2

was too big to carry, so they "started blasting away at the lock." (*Id.* at 523-24). But Herr suddenly reappeared and shot Cody in the leg; Cody collapsed and yelled for help. (*Id.* at 524). He yelled at Kyle to "shoot that mother fucker;" he "didn't want to get shot again." (*Id.* at 571, 527). Kyle fired one shot at Herr. (*Id.*).

Cody hopped over to the safe; they found two lockboxes inside, but no visible cash. (*Id.* at 528). They grabbed the lockboxes and went outside. (*Id.* at 528-29). Cody collapsed on the back deck, but then managed to go down the driveway with Kyle. (*Id.* at 528-29, 531). The Defendant picked them up and drove them to his house. (*Id.* at 533-34). Cody later went to the hospital, and told the police he had been shot in a drug deal. (*Id.* at 542-44). He gave the Defendant the same story so he would know about it. (*Id.* at 544-45). But Cody said the Defendant later talked to police. (*Id.* at 564-65).

One of the lockboxes turned out to have about $200,000 inside. (*Id.* at 546). Kyle met with the Defendant the day after the killing, and gave him $30,000. (N.T., 8/7/13, at 452-56; N.T., 8/8/13, at 549-50). Kyle falsely told the Defendant they only received $100,000, and that he and his brother were getting $35,000 each because they actually went inside. (N.T., 8/8/13, at 550). Kyle and Cody ultimately took around $90,000 each. (*Id.* at 552).

During Cody's direct examination, the prosecutor confirmed he had already pled guilty to numerous offenses, including second degree murder, and had been sentenced to life incarceration without the possibility of parole. (*Id.* at 559). On cross-examination, Cody acknowledged he had initially been charged with first degree murder. (*Id.* at 572). Over objection, Cody said on redirect that his plea had no impact on his testimony. (*Id.* at 573-74).

The defense called Kyle to testify. (N.T., 8/9/13, at 695). After he asserted his privilege against self-incrimination, the defense presented portions of a statement he had given police. (*Id.*

3

at 696, 703; Defense Exhibit 1). In his statement, Kyle contradicted Cody by saying he only shot Herr after they had opened the safe and Cody had collapsed on the deck outside. (*Id.*).

Trial counsel began his closing argument by asking, "Why did Kyle Wunder murder Douglas Herr?" (N.T., 8/12/13, at 723). He argued it had nothing to do with the plan, which was "never to hurt anyone." (*Id.*). And he argued Kyle was more believable than Cody as to when Herr was shot, as Cody was in shock at the time after being shot. (*Id.* at 724-25). He told the jury the killing was "done out of anger and totally unnecessary to completing this crime." (*Id.* at 726). In other words, counsel said, it was not "in furtherance of the crime." (*Id.*).

The jury found the Defendant guilty of second degree murder, robbery, criminal conspiracy to commit robbery, burglary, and criminal conspiracy to commit burglary. (*Id.* at 792). The Court sentenced him to life incarceration without the possibility of parole. (N.T., 10/2/13, at 11).

On direct appeal, the Defendant challenged the second degree murder instruction and the prosecutor's comments in closing argument. The Superior Court affirmed the Defendant's convictions and sentence in *Commonwealth v. Harmer*, 1902 MDA 2013 (Pa. Super. 2014).

*The Instant Petition and Evidentiary Hearing*

The Defendant filed the instant PCRA petition on January 7, 2016. Appointed PCRA counsel filed an amended petition, asserting trial counsel was ineffective for a variety of reasons. At a hearing on May 12, 2016, the Court heard the following testimony from the Defendant, the Defendant's father, and trial counsel. (N.T., 5/12/16, at 4-70).

Trial counsel acknowledged he did not request an accomplice credibility instruction, even though Cody was the Defendant's accomplice. (*Id.* at 18). This "ha[d] to do with the theory of the case," specifically that the Defendant "wasn't guilty of second degree murder because what

4

the Wunder brothers did was something completely separate from the crime." (*Id.* at 19). He continued, "The theory of the case wasn't that some co-defendant was shifting the blame . . . ." (*Id.*). He also noted there was "overwhelming evidence" of the Defendant's involvement in the conspiracy to commit burglary, and that he had made a detailed statement to police. (*Id.* at 20). Counsel additionally said any accomplice credibility instruction would also have applied to Kyle, whose testimony he had relied on in arguing the killing was an act wholly separate from the conspiracy. (*Id.* at 21).

The Defendant's PCRA counsel confronted trial counsel with trial testimony referencing the Defendant's drug use and drug dealing. (*Id.* at 23-25, 28, 30-33). Counsel said he had notice that at least some of this testimony might come in. (*Id.* at 36). Asked why he did not move *in limine* to prevent it, counsel thought it may have been factually tied to the case "and was probably going to come in." (*Id.* at 33). But he conceded that "using heroin at someplace not related to the case shouldn't be admitted." (*Id.* at 24). As for why he did not object, counsel said, "[I]t goes back to the theory of the case and . . . where I wanted the jury's focus to be when I was objecting or arguing or presenting evidence." (*Id.* at 26). He testified that because "the jury was aware that my client conspired to commit this burglary already," drug use and drug dealing was "pretty minor." (*Id.* at 26-27). He did not believe this evidence "was in any way, shape or form detracting from what [he] was trying to do and trying to argue for the defendant." (*Id.* at 38). He could have requested a limiting instruction, but did not because "[t]here was no point to highlighting this and making an issue out of it." (*Id.* at 28-30).

PCRA counsel also read into the record Cody's testimony concerning his guilty plea. (*Id.* at 39-40). This included the fact that Cody had pled guilty to second degree murder and other offenses in exchange for a sentence of life imprisonment without the possibility of parole. (*Id.* at

5

40). Trial counsel acknowledged this "appear[ed] to be bolstering" and he did not object to it, but he thought it may have been admissible if he had challenged Cody's credibility in opening statement. (*Id.* at 40-41). He also thought it might have been helpful to show Cody had been convicted of second degree murder, as his involvement was "much, much more significant than" the Defendant's. (*Id.* at 70).

PCRA counsel further questioned a stipulation to Cody's injuries. (*Id.* at 43-44). Trial counsel denied that this bolstered Cody's testimony, and said he wanted it before the jury to confirm that Cody had been shot. (*Id.* at 45). This, he said, was because Cody's being shot suggested "he might not have had a clear recollection" as to when the shooting occurred. (*Id.*).

The Defendant and his father testified they told counsel before trial that character witnesses, including the Defendant's mother and father, were ready, willing, and able to testify to his reputation for nonviolence. (*Id.* at 6-7, 10-11). They said counsel had told them such witnesses were unnecessary; they were not "part of his case." (*Id.* at 8, 14).

Trial counsel acknowledged declining to present character witnesses. (*Id.* at 51-52, 54-56). But he disputed whether the Defendant's reputation for nonviolence was relevant, noting he had already admitted to the conspiracy and was sitting in the truck when the killing occurred. (*Id.* at 52-53). He also said he generally does not present character evidence when his client is not going to testify, because this makes the jury wonder why he is not taking the stand. (*Id.* at 53-54). He said omitting character evidence keeps the jury's focus on the Commonwealth's evidence and "all the instructions that the law gives at the end of the case work in your favor in that way." (*Id.*). Counsel also suggested character evidence might have opened the door to impeachment material, but was unaware of any specific material. (*Id.* at 57-58).

6

Additionally, PCRA counsel presented testimony he asserted was improper hearsay from beyond the scope of the conspiracy. (*Id.* at 59-65). Trial counsel said this testimony was admissible, and asked what difference it could have made where the Defendant had conceded participating in the conspiracy. (*Id.* at 63-64).

The Defendant submitted a brief ("Defense Brief") after the hearing.

### *Discussion*

The Defendant contends trial counsel was ineffective for failing to: A) request Jury Instruction (Criminal) 4.01 (the "accomplice credibility" instruction); B) prevent or otherwise challenge evidence of his bad acts; C) object to improper bolstering of Cody Wunder; D) present witnesses to testify to his nonviolent character; and E) object to hearsay statements made outside the scope of any conspiracy. (Defense Brief at 3-25). He also argues the cumulative prejudice from these instances of ineffectiveness warrant relief, even if none do in isolation. (*Id.* at 25-26).

### *Applicable Standards*

The petitioner bears the burden of establishing, by a preponderance of the evidence, that his conviction is the product of an error cognizable under the PCRA, including ineffective assistance of counsel. *Commonwealth v. Johnson*, 139 A.3d 1257, 1272 (Pa. 2016). Counsel is presumed effective, and cannot be ineffective for failing to take frivolous actions. *Commonwealth v. Treiber*, 121 A.3d 435, 445 (Pa. 2015). To be entitled to relief on ineffectiveness grounds, a PCRA petitioner must show: 1) the underlying claim has arguable merit; 2) no reasonable basis existed for counsel's action or inaction; and 3) he suffered prejudice as a result of counsel's deficiency, *i.e.*, that there is a reasonable probability that, absent the deficiency, the outcome would have been different. *Id.* Although uninformed tactical maneuvers may support a claim of ineffectiveness, "strategic choices made after thorough

7

investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984).

*Failure to Request an Accomplice Credibility Instruction*

The Defendant first argues trial counsel was ineffective for failing to request the accomplice credibility instruction where Cody was his accomplice and gave damaging testimony. (Defense Brief at 3-7).

There can be no dispute that Cody was a critical witness who incriminated the Defendant. Nor is there any question that Cody and the Defendant were accomplices: trial counsel admitted as much at the PCRA hearing. (N.T., 5/12/16, at 18). The instruction would thus likely have been given on request. *See Commonwealth v. Smith*, 17 A.3d 873, 906 (2011) ("For an accomplice charge to be required, the facts need to permit an inference that the witness was an accomplice."). According to the Defendant, this means counsel should have requested this instruction and had no reasonable basis not to. (Defense Brief at 6).

But counsel testified at the PCRA hearing that he did not seek the instruction because it conflicted with his strategy. (N.T., 5/12/16 at 19-20). He explained, "The theory of the case wasn't that some co-defendant was shifting the blame," the traditional scenario requiring an accomplice credibility instruction. (*Id.* at 19). Instead, the theory was that Cody's testimony was essentially true, but he was mistaken as to the timing of the killing. In fact, counsel told the jury in closing argument, "[N]either one of [the Wunder brothers] is probably lying. Probably what you heard is probably how each one of them remembers the event." (N.T., 8/12/13, at 724). And he argued Kyle had the superior recollection because, unlike Cody, he had not just been shot when the killing occurred. (*Id.* at 724-25). Giving this instruction would thus have likely confused the jury by sending mixed messages as to whether Cody was mistaken or lying.

8

Consequently, it cannot be said that counsel had no reasonable basis for refraining from requesting this instruction. Rather, this decision was in line with counsel's strategy. And counsel's testimony shows the decision was a conscious one, made after careful consideration. (N.T., 5/12/16, at 19-21). It is therefore "virtually unchallengeable," and cannot support a claim of ineffectiveness. *Strickland*, 466 U.S. at 690-91.

For much the same reason, the failure to request this instruction was not prejudicial. The instruction would have told the jury to view Cody's testimony with suspicion. But the Defendant was conceding the vast majority of what Cody said. And, as counsel also said at the PCRA hearing, the instruction would have applied equally to Kyle, whose statement was actually key to the defense. (N.T., 5/12/16, at 21; N.T., 8/9/13, at 703; Defense Exhibit 1). Any positive effect it might have had on the defense would thus have been canceled out, if not overwhelmed, by its negative effect. The failure to request the instruction thus could not have been prejudicial.

### *Evidence of the Defendant's Prior Bad Acts*

The Defendant argues counsel should have kept out evidence of his prior bad acts---drug use and sales---or at least muted its impact once it came in. (Defense Brief at 7-13). And he points out that counsel appeared to concede at the PCRA hearing that at least some of this evidence was inadmissible. (*Id.* at 11; N.T., 5/12/16 at 25-26).

Counsel surely could have moved *in limine* to prevent or minimize references to drug use and sales. But his explanation for his failure to do so makes sense: because "the jury was aware that [his] client conspired to commit this burglary already," drug use and drug dealing was "pretty minor," and was not "in any way, shape or form detracting from what [he] was trying to do and trying to argue for the defendant." (N.T., 5/12/16, at 26-27, 38). And he sensibly did not

9

request a limiting instruction, because "[t]here was no point to highlighting this and making an issue out of it." (*Id.* at 28-30).

The argument could be made that there was no down side to moving *in limine* to bar the evidence. This would have prevented the jury from hearing it at all, and would have avoided any need for drawing undue attention to the evidence with an objection or curative instruction. But counsel's strategy was to give the jury the full story, warts and all, in the hopes of showing the Defendant had nothing to hide: he may have been guilty of armed robbery and minor drug offenses, but he was not---and would never have agreed to be---a murderer. Based on counsel's credible PCRA hearing testimony, considered against the backdrop of the overwhelming evidence against the Defendant, it was reasonable not to challenge evidence of drug use and drug sales. And because these bad acts were so minor in the face of what the Defendant had already admitted, there is also no likelihood that this decision prejudiced the Defendant.

### *Cody Wunder's Medical and Plea Records*

The Defendant also claims counsel was ineffective for failing to prevent the Commonwealth from introducing prior consistent statements[2] in the form of Cody Wunder's guilty plea and medical records. (Defense Brief at 13-15). He argues this cannot have been proper rehabilitation of the witness where it was adduced on direct examination. (*Id.* at 14).

The Defendant is correct that this evidence was adduced on direct, and thus potentially objectionable. (*Id.* at 124; N.T., 5/12/16, at 41-42). Indeed, this can make prior consistent statements inadmissible. *See Commonwealth v. Cook*, 952 A.2d 594, 624 (Pa. 2008) ("Usually,

---

[2] The Defendant frames the issue as improper bolstering through "plac[ing] the prestige of the government behind the witness through personal assurances . . . or indicat[ing] that information which is not before the jury supports the witness' testimony." (Defense Brief at 13). In substance, however, the evidence he challenges fits more comfortably in the prior consistent statement category.

10

evidence of a prior consistent statement may not be introduced until after the witness's testimony has been attacked on cross-examination . . . .").

But even assuming the evidence could have been excluded, trial counsel explained that he viewed both the plea and medical records as helpful to the Defendant. With regard to the plea, counsel said showing Cody, whose involvement was "much, much more significant than" the Defendant's, had been convicted of second degree murder suggested the Defendant was guilty of a lesser crime. (N.T., 5/12/16, at 70). And as for the medical records, counsel said Cody's being shot demonstrated "he might not have had a clear recollection" as to what had happened. (*Id.* at 45). The record supports this, as counsel argued to the jury that Kyle was more believable than Cody as to when Herr was shot because Cody was in shock after being shot. (N.T., 8/12/13, at 724-25). Counsel thus provided reasonable bases for letting this evidence stand.

Additionally, the Defendant fails to articulate any convincing reason why this evidence was prejudicial. He argues generally that Cody's credibility was key, and that this evidence bolstered his credibility. (Defense Brief at 14-15). But this ignores that the Defendant had conceded the truth of the vast majority of Cody's testimony. Again, the only component of Cody's testimony that the defense disputed was the timing of the killing. And trial counsel explained convincingly that he used this challenged evidence to the Defendant's advantage on the critical question of timing. There is thus no reasonable probability that preventing this evidence could have changed the outcome. If anything, it strengthened the Defendant's theory.

*Failure to Call Character Witnesses*

The Defendant further maintains trial counsel was ineffective for failing to call character witnesses, who would have testified that he had a nonviolent reputation. (Defense Brief 15-19). He observes that several family members were willing to testify to this effect, his father

11

confirmed this at the PCRA hearing, and trial counsel admitted as much himself. (*Id.* at 17; N.T., 5/12/16, at 10-11, 52-55). The Defendant has therefore established that counsel could have presented these character witnesses, yet spurned the opportunity. But counsel gave good reasons for declining to present these witnesses, and their omission was not prejudicial.

First, trial counsel said he rarely presents character evidence when his client is not going to testify, because this makes the jury wonder why he is not taking the stand. (N.T., 5/12/16, at 53-54). The Defendant counters that the Court's instruction not to consider the Defendant's failure to testify would have remedied this concern. (Defense Brief at 19). But the Court also instructed the jury on the presumption of innocence and the burden of proof. (N.T., 8/12/13, at 783-84). And counsel said omitting character evidence keeps the jury's focus on the Commonwealth's evidence and "all the instructions that the law gives at the end of the case work in your favor in that way." (N.T., 5/12/16, at 53-54).

Further, counsel understandably questioned the significance of character evidence where the Defendant had admitted to the conspiracy and was sitting in the truck when the killing occurred. (*Id.* at 52-53). The Defendant insists, "A plan and agreement to steal money does not equate to a concession that Defendant committed Second Degree Murder, Robbery or Criminal Conspiracy to commit robbery." (Defense Brief at 18). Agreeing to steal money kept in a safe in another person's home, however, surely constitutes an agreement to commit robbery. Armed robbery, even, where the conspirators armed themselves beforehand. They plainly contemplated violence, which would have cut the legs out of the evidence in question.

Moreover, juries take testimony from a defendant's family members with a grain of salt. *See, e.g., United States v. Mangiardi*, 201 F.Supp.2d 386, 390 (M.D. Penn. 2002) ("[W]e believe that Mangiardi's wife and sister are naturally biased and otherwise lacking in credibility.").

12

Instructive is *Commonwealth v. Mickens*, 597 A.2d 1196, 1202-04 (Pa. Super. 1991), where the defendant challenged the failure to call family members as character witnesses. In rejecting the claim, the court approved counsel's explanation that he did not do so "because, according to his experience, family members generally lacked credibility as character witnesses due to their obvious bias in favor of the accused." *Id.* at 1204. Trial counsel did not give this explanation at the hearing, but it is a natural inference and another reason the evidence could not have mattered.

The Defendant also notes he had no prior convictions for violent offenses, and that counsel was unaware of any impeachment that might have shown a violent reputation. (Defense Brief at 17-18; N.T., 5/12/16, at 58). This may have reduced the drawbacks of presenting the witnesses, but it fails to establish any benefits. Character evidence may, in some cases, raise a reasonable doubt. (Defense Brief at 19). But that would not have been the case here because, as explained above, the witnesses were inherently biased and the evidence conflicted with the defense. As such, counsel had reasonable bases for declining to present character evidence, and there is no reasonable probability that the evidence would have made any difference.

### *Hearsay Statements of a Co-Conspirator*

As an additional ground of ineffectiveness, the Defendant challenges counsel's failure to object to several of Cody's hearsay statements that he argues were beyond the scope of any conspiracy. (Defense Brief at 20-25). Specifically, the Defendant identifies testimony from Steven Marsch that in July, 2012, he overheard the Defendant and Cody say that: 1) "they" were going to do something "bad"; 2) "they" had a "come-up," meaning they expected to get "a bunch of money" from a house in Lancaster County; and 3) "they" were going to drive past the house to "scope it out . . . ." (Defense Brief at 21-24; N.T., 8/7/13, at 332-39). This argument fails for two reasons.

13

First, the statements were plainly within the scope of the conspiracy. The Defendant's assertion that they were made "before the alleged conspiracy began" is unpersuasive, as planning the crime is clearly part of the conspiracy. (Defense Brief at 24). *See, e.g.*, 18 Pa.C.S.A. §903(a)(2) (a person is guilty of conspiracy to commit a crime where he "agrees to aid . . . in the *planning* or commission of such crime . . . .") (emphasis added). The evidence was thus perfectly admissible. *See Dutton v. Evans*, 400 U.S. 74, 81 (1970) (the hearsay statements of one conspirator may be admitted against another where they were "made in the course of and in furtherance of the conspiracy"). Counsel therefore cannot have been ineffective for failing to object to it. *See Treiber*, 121 A.3d at 445; *Commonwealth v. Lilliock*, 740 A.2d 237, 245 (Pa. Super. 1999) ("[A]n objection to the admission of such evidence would be futile, and trial counsel was not ineffective for failing to object to the admission of the evidence.").

Second, although the Defendant repeatedly characterizes this testimony as relating to Cody's statements, it actually relates to the statements of both Cody *and* the Defendant. (N.T., 8/7/13, at 332-35, 337-39). This is a problem because the Defendant does not challenge the admissibility of his own statements, meaning anything attributed to Cody is merely cumulative to proper evidence. It is therefore impossible to see the evidence as prejudicial. *See Commonwealth v. Foy*, 612 A.2d 1349, 1352 (Pa. 1992) (any error was harmless where "the erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence"). This allegation of ineffectiveness is therefore also meritless.

### Cumulative Effect

Finally, the Defendant contends the cumulative prejudice of the alleged instances of ineffectiveness warrant relief, even if none do individually. (Defense Brief at 25-26). He argues

14

this is possible wherever "the failure of individual claims is grounded in lack of prejudice," if not where the failure is due to a lack of arguable merit. (*Id.* at 25). But this does the Defendant no good where, for the reasons set forth above, he has demonstrated neither arguable merit nor prejudice for any of his claims of ineffectiveness. "[T]he cumulative effect of each non-error does not add up to ineffective assistance of counsel: zero plus zero is still zero." *United States v. Narducci*, 18 F.Supp.2d 481, 502 (E.D. Penn. 1997). The Defendant has failed, even in the aggregate, to establish ineffective assistance of counsel.

### *Disposition*

Accordingly, for the foregoing reasons, the Defendant's petition for post-conviction relief is hereby **DISMISSED**. If the Defendant intends to appeal this dismissal to the Superior Court, he must do so within 30 days of this Order.

BY THE COURT:

DENNIS E. REINAKER
PRESIDENT JUDGE

SEPTEMBER 1, 2016

ATTEST:

Copies to:

Randall L. Miller, Esquire
Assistant District Attorney Maria A. Cusick, Esquire

15